**Valli MOSER, Defendant–Appellant,**

v.

**UNITED STATES of America,
Plaintiff–Appellee.**

No. 93–2370.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1994.

Decided March 9, 1994.

John W. Vaudreuil, Asst. U.S. Atty., Timothy O'Shea (argued), Office of the U.S. Atty. Madison, WI, for plaintiff-appellee.

Russell J. Mittelstadt (argued), Madison, WI, for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and SHARP, District Judge.*

## I.

ALLEN SHARP, District Judge.

In the district court, the appellant, Valli M. Moser, was charged in a two-count indictment. The appellant was charged in Count I with bribing an IRS employee in violation of 18 U.S.C. § 201(b)(1)(A); and in Count II with making false statements to an IRS inspector in violation of 18 U.S.C. § 1001. Specifically, the indictment charged the appellant as follows:

THE GRAND JURY CHARGES:

### COUNT I

From on or about July 14, 1992, to on or about August 6, 1992, in the Western District of Wisconsin, the defendant,

### VALLI M. MOSER,

directly, corruptly gave, offered and promised something of value to a public official with intent to influence an official act, specifically, the defendant VALLI M. MOSER, acting with the intent to influence the collection group manager for the Internal Revenue Service in Eau Claire, Wisconsin, in his official actions regarding the reduction of a tax liability, directly, corruptly gave, offered and promised that public official that she, VALLI M. MOSER, would sell and market that public official's home at no cost to that public official, and, fur-

---

* The Honorable Allen Sharp, Chief Judge, United States District Court for the Northern District of Indiana, sitting by designation.

ther, that she, VALLI M. MOSER, would return to that public official her part of the commission on the purchase of an existing home by that public official.

(All in violation of Title 18, United States Code, § 201(b)(1)(A)).

## COUNT II

On or about August 27, 1992, in the Western District of Wisconsin, the defendant,

## VALLI M. MOSER,

knowingly and willfully made false material statements and representations to the United States Department of the Treasury, Internal Revenue Service, a department of the United States, in a matter within the jurisdiction of that department, specifically, the defendant VALLI M. MOSER stated and represented to an inspector from the Internal Revenue Service, Department of the Treasury, that she was not aware of the amount owed to the IRS by her ex-husband and that she had not discussed this tax liability with the collection group manager for the Internal Revenue Service in Eau Claire, Wisconsin, the defendant then knowing that these statements and representations were false.

(In violation of Title 18, United States Code, § 1001).

The appellant was found not guilty of Count I and guilty of Count II by a jury. Chief Judge Crabb sentenced her to three years probation, and the appellant was ordered to serve the first four months in home detention and was fined $5,000.00. This appeal followed.

The appellant raises overlapping contentions with regard to the so-called "exculpatory no" doctrine, and argues further that the appellant's motion to dismiss Count II at the conclusion of the government's case in chief should have been sustained. It appears that the appellant has preserved the so-called "exculpatory no" argument with a motion to dismiss Count II pretrial, motion *in limine*, and a motion for judgment of acquittal made pursuant to Fed.R.Crim.P. 29 at the end of all the evidence. Precisely the same argument which was made in all these motions and the district court denied same in all instances.

The standard of review here is *de novo* review of a question of law. *United States v. Church,* 970 F.2d 401, 404 (7th Cir.1992). *See also United States v. Equihua–Juarez,* 851 F.2d 1222, 1224 (9th Cir.1988); *United States v. Taylor,* 907 F.2d 801, 803 (8th Cir. 1990). This is a case where one might be tempted to speculate and surmise about subjects that are beyond the formal record. That subject was broached during oral argument and this court will stay faithfully within the formal record of this case.

While the jury found the defendant not guilty of Count I, a bribery charge, it found the defendant guilty of Count II, which purported to assert a violation of Title 18 U.S.C. § 1001:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (1976).

To some extent, both at oral argument and in the briefs, counsel for the appellant has attempted to reach well beyond the issues preserved and to suggest other possible arguments. This court will confine itself to those issues which have been adequately preserved. In reference to Count II, the government's key witness, apparently, was IRS Inspector John Idleberg. The evidence discloses that this appellant's ex-husband was the principal target of the IRS activities in this case when he was refinancing property with a bank in Menomonie, Wisconsin. This appellant was involved with that transaction because she was still listed on the existing mortgage. In order to complete that refinancing, it was necessary for the ex-husband to pay an outstanding tax liability to the IRS, which was thought to be approximately $11,-

000, but actually turned out to be $21,000. That fact caused problems in regard to the refinancing. Brian Best was the collections manager of the IRS in Eau Claire, Wisconsin. Best had met the appellant in her capacity as a realtor. Conversations passed between the appellant and Best, and in 1992, the appellant discussed her current problem involving her ex-husband and his tax liability. Best explained the IRS procedures of "abatement through reasonable cause and offer in compromise" programs. Best believed as a result of these conversations that the appellant had offered him a bribe. These meetings with the appellant were recorded. Since the appellant was found not guilty of Count I, it is not necessary to explicate much of the Brian Best testimony. Nor is it necessary to put the label of entrapment on it, which her counsel repeatedly did in oral argument.[1]

The event appears to have taken place on the morning of August 27, 1992, when Inspectors John Idleberg and Thomas Irvin of the IRS visited the appellant's home in Eau Claire, Wisconsin, to interview her. The interview was quite professional and quite formal, except that the appellant was attired in a bathrobe and declined the opportunity to change her clothes. However, she did not appear nervous or frightened. She was advised of her constitutional rights and executed an IRS form titled "Waiver of Right to Remain Silent and of Right to Advice of Counsel." She read the form, said she understood her rights, as they were orally explained to her. She signed the form indicating that she understood her rights and was willing to waive them and speak to the inspectors. She was then asked to describe her last contact with the IRS. She told the inspectors that her husband was re-financing a loan and since she was named on some of the property, she contacted the bank and the IRS to obtain an exact payoff figure. She said that the IRS did not give her any details. The appellant also told the inspectors that she did not know the amount of the taxes owed to the IRS, and further related that once the loan was signed at the bank, the bank personnel had given her the check to drop off to the IRS office in Eau Claire.

She did not recall the amount of the check. Inspectors suggested a different version of when the check had been dropped off at the IRS office, and gave her a chance to correct her statement. The appellant said that she wasn't sure how she had obtained the check, but she believed that she got the check and gave it to Brian Best of the IRS the next day in an envelope. She claimed that she did not know the amount of the check and that the envelope was not opened in her presence. She denied that there had been any discussion of taxes between her and Brian Best, and denied any efforts to cut any deal with the IRS and Brian Best to have her ex-husband's taxes reduced. This interview lasted approximately forty minutes, covering discussions about the selling of Brian Best's house at no cost to him. She also did not tell them that she had spoken to Brian Best on at least five occasions, on July 14, 15, 31, August 4 and 6, regarding her ex-husband's tax problems. The appellant was given an opportunity to change the information she had provided, and then expressed her discomfort with the interview and it was terminated. A later call was made by Brian Best, in which appellant indicated a desire to talk to him about her ex-husband. When Best asked her if she told the inspectors that he had reduced the taxes in return for her letter, she said, "no, definitely not." The appellant said that she had told the inspectors that she didn't know the dollar amount and that she had said nothing about the arrangements with Best. The appellant testified at her own trial regarding these interviews, claiming that she believed that the inspectors were accusing her of receiving a $10,000 kickback. She testified that she had called the IRS office to inquire about the accuracy of the tax bill, and that she told the inspectors that she had not contacted Brian Best about the reduction of a tax liability, and she admitted that she told the inspectors that she did not know the exact amount of the check given to Brian Best.

The appellant attempts to argue in her brief that the district court erred by

---

1. No argument has been here advanced as to inconsistent or irreconcilable verdicts. *See United States v. Walker,* 9 F.3d 1245, 1248 (7th Cir. 1993).

failing to instruct the jury on the "exculpatory no" doctrine in addition to failing to dismiss on that basis. However, no error was preserved on this question by either objecting to instructions given or objecting to the failure to give instructions that may have been tendered. During the trial, there were extensive discussions between Chief Judge Crabb and counsel on this precise subject outside the presence of the jury with regard to the content of instructions on the so-called "exculpatory no" doctrine. The district judge complied with the mandates of Fed. R.Crim.P. 30 in regard to the formulation of instructions.

■ In her brief, and then on oral argument, appellant's counsel has attempted to argue for the first time that the allegedly false statements were not material. This issue was not raised in the district court and will not be considered for the first time here. It is not here contended that such is plain error. *United States v. Olano,* — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *See also United States v. Livingston,* 936 F.2d 333, 336 (7th Cir.1991).

■ Materiality inheres in a violation of § 1001. *See Kungys v. United States,* 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988). Materiality is a question of law for the district court. *See United States v. Bullock,* 857 F.2d 367, 370–71 (7th Cir.1988).

> "Congress intentionally drafted section 1001 in an expansive fashion in order that it be accorded the broadest possible interpretation regarding the situations in which it would come into play." *United States v. Steele,* 896 F.2d 998, 1001 (6th Cir.1990).

*United States v. Taylor,* 907 F.2d 801, 803 (8th Cir.1990). Likewise, the Supreme Court has given a generous construction to this and similar statutes in *United States v. Rodgers,* 466 U.S. 475, 484, 104 S.Ct. 1942, 1948, 80 L.Ed.2d 492 (1984), and *Bryson v. United States,* 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969). No error is here preserved on the issue of materiality.

■ The so-called "exculpatory no" doctrine is largely a judge made creation in the federal judiciary below the Supreme Court level. Timothy I. Nicholson, Note, *Just Say No: An Analysis of the Exculpatory No Doctrine,* 39 Wash.U.J. of Urb. & Contemp.L., 225, 232–49 (1991).

This court took a passing glance at the doctrine in *United States v. King,* 613 F.2d 670 (7th Cir.1980), holding there that it did not apply. Most recently, this court, speaking through Judge Ripple, has opined that "the scope of this exculpatory denial doctrine has been read quite narrowly by the Illinois courts" in *United States v. Tipton,* 3 F.3d 1119, 1124 (7th Cir.1993) (citation omitted). A district court has also provided insightful assistance on this subject in *United States v. Russo,* 699 F.Supp. 1344 (N.D.Ill.1988).

■ Title 18 U.S.C. § 1001 prohibits knowingly and willfully making a false statement which is material to a matter within the jurisdiction of the department or agency of the United States. The exculpatory denial or "exculpatory no" exception to § 1001 is the judicial expression of the view that the statute is generally not applicable to false statements which are essentially exculpatory denials of criminal activity. "The exculpatory denial exception is rooted in two separate but complementary concerns which courts have employed to create the exception and to define its scope." Tim A. Thomas, Annotation, *What Statements Fall Within Exculpatory Denial Exception to Prohibition, under 18 USCS § 1001, against Knowingly and Willfully Making False Statement which is Material to Matter within Jurisdiction of Department or Agency of United States,* 102 A.L.R.Fed. 742, 748–49 (1991) [hereinafter Thomas, 102 A.L.R.Fed. 742]. The first is the legislative history of 18 U.S.C. § 1001; the second is the "concern for Fifth Amendment values implicated by the application of § 1001 to a mere false denial of criminal wrongdoing." *Id.*

The "exculpatory no" doctrine represents a judicial gloss on 18 U.S.C. § 1001. A careful examination of cases in the Supreme Court of the United States dealing with Section 1001 reveals that this concept has not found favor there. In a very narrow and limited fashion, it has found favor here. *See United States v. King,* 613 F.2d 670 (7th Cir.1980). It therefore becomes our obligation to examine this

record under the concept of "exculpatory no" which has evolved in this circuit. *United States v. Tipton*, 3 F.3d 1119, 1124 (7th Cir. 1993).

The courts have conceded that a person questioned about that person's criminal activity may avoid violating the statute by either telling the truth or declining to speak altogether. *See United States v. Russo*, 699 F.Supp. 1344 (N.D.Ill.1988). However, tension between the statute and the Fifth Amendment against self-incrimination has been recognized by many courts. The scope of the application of the exception has been restricted by courts to varying degrees:

(1) The exception has been restricted to situations where only a truthful answer would have incriminated the declarant;

(2) some courts have held that the exception applies to only mere denials of criminal activity and not to affirmative misrepresentations;

(3) the exception must be made under circumstances indicating that the declarant was unaware that he or she was under investigation; and

(4) the false statement must be unrelated to a privilege or a claim against the government;

(5) the statement must be a response to an inquiry initiated by a federal agency or department.

Thomas, 102 A.L.R.Fed. 742 at §§ 3–7.

This case seems to be somewhere between this court's opinion in *King* and the Northern District of Illinois's opinion in *Russo*. This appellant was not seeking employment; she was responding to questions by an agency official. Her answers were more than a mere no, and she did not initiate the interview. One area seems to be whether she knew she was under investigation and there is disagreement on that. She had certainly been advised of her rights which ought to have signalled that she was a target. There can be no doubt that *King* provided a very small window of opportunity for the application of the "exculpatory no" exception in this circuit. That was certainly re-emphasized by Judge Ripple in *Tipton* most recently. This record fails to disclose that reversible error occurred when Chief Judge Crabb failed to take Count II away from the jury on the basis of the "exculpatory no" doctrine. Although some peripheral attempt was made to do so, no issue was preserved on appeal to argue the insufficiency of the evidence with reference to Count II. The only argument preserved was one with regard to an alleged error of law in failing to apply the "exculpatory no" doctrine to either prevent the jury verdict or to set it aside. Given the factual setting of this case, no reversible error was committed by the district judge in letting Count II go to the jury and the sentence on a finding of guilty in it. The district court is affirmed.

AFFIRMED.