UNITED STATES of America, Appellee,

v.

Robert WIENER, James Wiener, Richard Murphy, Michael Galati, Luis Cueto, John Pinto, Serge Jean–Jacques, Antonio DeJesus, Robert Humes, Joseph La Rosa, Defendants,

Domenic Paciello, Reinaldo Roman, James Brogan, Defendants–Appellants.

Nos. 535, 725, & 1248, Dockets 95–1294(L), 95–1403, & 95–1597.

United States Court of Appeals, Second Circuit.

Argued April 4, 1996.

Decided Sept. 16, 1996.

Loren I. Glassman, White Plains, NY, for Appellant Reinaldo Roman.

Stuart Holtzman, Holtzman & Taikeff, New York City, for Appellant James Brogan.

Anthony J. Servino, Servino & Seymour, White Plains, NY, for Appellant Domenic Paciello.

. Cynthia Keeffe Dunne, Assistant United States Attorney, Southern District of New York, NY (Mary Jo White, United States

Attorney; Marian W. Payson, Assistant United States Attorney, of counsel), for Appellee.

Before: WINTER, JACOBS and CABRANES, Circuit Judges.

WINTER, Circuit Judge:

Domenic Paciello, Reinaldo Roman, and James Brogan appeal from convictions and sentences after a jury trial before Judge Brieant in the United States District Court for the Southern District of New York. All three were convicted of unlawfully receiving money from an employer in violation of 29 U.S.C. § 186(b)(1), (a)(2), (d)(2), and Roman and Brogan were also convicted of making a false statement to federal investigators in violation of 18 U.S.C. § 1001. We have decided all but one issue raised by these appeals by a summary order filed this day. *See United States v. Wiener,* Nos. 95–1294(L), 95–1403, 95–1597 (2d Cir.* * * * * * * *). We write separately to reject the so-called "exculpatory no" doctrine as a defense to a false statement charge under 18 U.S.C. § 1001.

## BACKGROUND

We relate only the facts relevant to Reinaldo Roman's and James Brogan's claims that the false statements for which they were convicted fell within the "exculpatory no" doctrine.

Roman and Brogan were officers of Local 32E, Service Employees International Union, AFL–CIO ("Local"). On March 18, 1993, federal agents made an unannounced visit to Reinaldo Roman's home in the Bronx. The agents identified themselves as federal agents and notified Roman that he was the subject of a federal grand jury investigation of labor law violations. They stated that they had a subpoena requiring his appearance before the grand jury. Roman agreed to answer the agents' questions and invited them into his home. The interview took place in Roman's dining room. The agents began by eliciting routine background data such as Roman's date of birth and social security number, and progressed to questions concerning his employment by the Lo-

cal. Roman stated to the agents that he had been a member of the Local for 30 years and had been a union delegate for the past eleven years. He indicated that his duties included visiting non-union buildings and trying to get new employees to join the union.

In response to the agents' questions, Roman denied that he had ever received cash from JRD Management Corporation, an employer of Local members. He gave responses such as "nothing" or "none." According to the testimony of one of the interviewing agents, Roman acknowledged that he knew that lying to federal agents was a crime but declined to modify his answers to the agents' questions. At trial, Roman was convicted of making a false statement within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001.

On October 4, 1993, federal agents visited Brogan's house. After advising Brogan that their visit concerned an inquiry into JRD Management Corporation and other individuals, they informed Brogan that they were seeking his cooperation in their investigation and that if he chose to cooperate, he would need an attorney to do so. Brogan then agreed to answer the agents' questions. In response to the agents' questioning, Brogan indicated that he had been a Local 32E member since 1951 and had been employed as a union delegate during the years 1987 and 1988. Brogan, too, was asked whether, as a union delegate, he had received any cash or gifts from JRD. He responded "no." According to the testimony of one of the interviewing agents, the agents then informed Brogan that they had executed a search of JRD's headquarters and had seized records indicating that he had in fact received cash from JRD. They also informed him that lying to federal agents in the course of an investigation was a crime. Shortly thereafter, the interview came to an end without Brogan modifying his answers. At trial, Brogan was convicted of making a false statement within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001.

## DISCUSSION

On appeal, both Roman and Brogan claim that their false statements fall within the so-

called "exculpatory no" doctrine, a defense to a Section 1001 charge recognized in many circuits, and that their convictions under Section 1001 must therefore be reversed.

■ To convict a defendant of violating Section 1001, the government must prove that the defendant: (i) knowingly and willfully, (ii) made a statement, (iii) in relation to a matter within the jurisdiction of a department or agency of the United States, (iv) with knowledge that it was false or fictitious and fraudulent.[1] *United States v. Silva,* 715 F.2d 43, 49 (2d Cir.1983). The so-called exculpatory denial or "exculpatory no" doctrine is a judicially-crafted exception to the statute created by various courts of appeals. *See* Timothy I. Nicholson, Note, *Just Say "No": An Analysis of the "Exculpatory No" Doctrine,* 39 Wash. U.J. Urb. & Contemp. L. 225, 232–49 (1991). While the breadth of the doctrine varies from circuit to circuit, the doctrine embodies the view that Section 1001 is generally not applicable to false statements that are essentially exculpatory denials of criminal activity.

We have neither recognized nor rejected the "exculpatory no" doctrine. Although it has often been argued before us, we have always found it inapplicable to the facts of a given case. *See, e.g., United States v. Ali,* 68 F.3d 1468, 1474 (2d Cir.1995) (declining to apply "exculpatory no" where defendant "did more than simply utter a simple denial" but made "a knowing and affirmative misrepresentation"); *United States v. Cervone,* 907 F.2d 332, 343 (2d Cir.1990) (declining to apply "exculpatory no" doctrine where one defendant made denial "in the context of a wide-ranging and discursive interview with agents who had identified themselves" and other defendant made statement which was not truly exculpatory), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991); *United States v. Capo,* 791 F.2d 1054, 1069 (2d Cir.1986) (declining to apply doctrine where defendant's "response was not a refusal to respond or a simple 'no' but consisted of

'affirmative misrepresentations'"), *rev'd in part on other grounds,* 817 F.2d 947 (2d Cir.1987) (in banc); *United States v. McCue,* 301 F.2d 452, 455 (2d Cir.) (stating that because interviewee was "well aware of the nature and purpose of the examination," the "exculpatory no" doctrine would not apply and decision on doctrine's availability "can be left until it arises"), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962).

■ Our flirtation with the "exculpatory no" doctrine is over. We agree with Roman and Brogan that their statements constitute true "exculpatory no's" as recognized in other circuits, and we therefore consider whether the doctrine is a defense to Section 1001 liability in this circuit. We hold that it is not.

We pause to describe the current state of the doctrine. The Supreme Court has never ruled on the validity of the "exculpatory no" exception. It has, however, been accepted by the First, Fourth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. *See Moser v. United States,* 18 F.3d 469, 473–74 (7th Cir. 1994); *United States v. Taylor,* 907 F.2d 801, 805 (8th Cir.1990); *United States v. Cogdell,* 844 F.2d 179, 183 (4th Cir.1988); *United States v. Tabor,* 788 F.2d 714, 717–19 (11th Cir.1986); *United States v. Fitzgibbon,* 619 F.2d 874, 880–81 (10th Cir.1980); *United States v. Rose,* 570 F.2d 1358, 1364 (9th Cir.1978); *United States v. Chevoor,* 526 F.2d 178, 183–84 (1st Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). In addition to our own, the Third, Sixth, and D.C. Circuits have neither adopted nor rejected the "exculpatory no" doctrine. *See United States v. LeMaster,* 54 F.3d 1224, 1229–30 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 701, 133 L.Ed.2d 657 (1996); *United States v. Barr,* 963 F.2d 641, 647 (3d Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992); *United States v. White,* 887 F.2d 267, 273 (D.C.Cir.1989). Oddly enough, the Fifth Circuit, the first to adopt the doctrine, *Paternostro v. United*

---

1. Section 1001 reads in full:

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

*States,* 311 F.2d 298 (5th Cir.1962), has been the only circuit to reject it, *United States v. Rodriguez–Rios,* 14 F.3d 1040 (5th Cir.1994) (in banc).

We turn to the merits. In our view, the plain language of Section 1001 provides no support for the doctrine. Although some courts have held that no "statement" is made "if the defendant merely answers an inquiry in the negative rather than by affirmatively supplying information," *Ali,* 68 F.3d at 1474 (citation and quotation marks omitted), we agree with the Fifth Circuit that "as a matter of common sense and plain meaning, the word 'no' is indeed a statement." *Rodriguez–Rios,* 14 F.3d at 1044;[2] *see also Le-Master,* 54 F.3d at 1230 (same). A denial most certainly intends to convey information, whether "affirmative" or not, and is regarded by no one conversant with the English language as non-assertive. In reality, therefore, the "exculpatory no" doctrine is a "judicial gloss" on Section 1001, *Moser,* 18 F.3d at 473, that creates a "narrow exception to section 1001's plain language." *United States v. Moore,* 27 F.3d 969, 979 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 459, 130 L.Ed.2d 367 (1994).

Judge-made exceptions to the plain meaning of a statute are not lightly undertaken. As the Supreme Court reiterated in its most recent decision interpreting Section 1001, "[i]n the ordinary case, absent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, [a court's] obligation is to apply the statute as Congress wrote it." *Hubbard v. United States,* —— U.S. ——, ——, 115 S.Ct. 1754, 1759, 131 L.Ed.2d 779 (1995) (citation and internal quotation marks omitted); *id.* at ——, 115 S.Ct. at 1758 (acknowledging *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955) as "seriously flawed" for "giving insufficient weight to the plain language of § ... 1001"); *see also Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) ("When we find the terms of a statute unambiguous,

judicial inquiry is complete except in rare and exceptional circumstances."). Section 1001's statutory language is clear enough for us to hold that an exculpatory utterance, whether "no" or something more elaborate, is a "statement" within the purview of the statute, and we do so hold.

We also find no support for the "exculpatory no" doctrine in the legislative history of Section 1001. *See* Tim A. Thomas, Annotation, *What Statements Fall Within Exculpatory Denial Exception to Prohibition, Under 18 USCS § 1001, Against Knowingly and Willfully Making False Statement Which Is Material to Matter Within Jurisdiction of Department or Agency of United States,* 102 A.L.R. Fed. 742, 748–49 (1991) (describing legislative history of 18 U.S.C. § 1001 as one of the two complementary concerns that have led courts to create the exception and to define its scope).

Section 1001 has its earliest origins in a Civil War-era statute that made it a crime to make a false claim or to make a false or fraudulent statement or entry in support of such a claim. *See* Act of March 2, 1863, ch. 67, 12 Stat. 696. Following amendments to the statute's penalty clauses and a recodification, Congress again modified the false-statement portion of the statute in 1918 to require a purpose to cheat and swindle or defraud the government. Act of Oct. 23, 1918, Pub.L. No. 65–228, § 35, 40 Stat. 1015–16. Congress's aim seems to have been to ensure liability for false statements made to defraud government corporations. *See Hubbard v. United States,* —— U.S. ——, ——, 115 S.Ct. 1754, 1760, 131 L.Ed.2d 779 (1995). In 1934, however, the fraudulent purpose requirement was removed at the request of the Secretary of the Interior, who wished to use the statute to enforce Section 9(c) of the National Industrial Recovery Act of 1933, Pub.L. ch. 90, 48 Stat. 195, 200, against producers of "hot oil," oil produced in violation of production restrictions established pursuant to the NIRA. *See United States v. Gilliland,* 312 U.S. 86,

---

**2.** Although we recognize, as did *Rodriguez–Rios,* that some courts have interpreted Section 1001's statutory phrase "Statements or representations" and its inclusion of other aggressive or inducing actions as evincing a statutory intent to penalize aggressive or inducing statements only, 14 F.3d at 1044, we agree with the Fifth Circuit that the statute's disjunctive construction discredits such a reading of Section 1001's plain language. *See id.*

93–94, 61 S.Ct. 518, 522–23, 85 L.Ed. 598 (1941) (discussing the history of the 1934 amendment); *id.* at 95, 61 S.Ct. at 523 (noting that the Supreme Court's decision in *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), holding the "hot oil" provisions of the NIRA unconstitutional, did not affect the validity of the 1934 amendments). Because of the earlier purpose requirement, the statute could not be used to enforce the NIRA, because any pecuniary or property loss that accrued from the production and sale of hot oil affected only other producers of oil, not the government. *See Gilliland,* 312 U.S. at 94, 61 S.Ct. at 522–23. Following the 1934 amendment, which effectively divorced the false-statement requirement from that of a false claim, the relevant language read

> ... whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States ... shall be fined not more than $500 or imprisoned not more than ten years, or both.

Act of June 18, 1934, Pub.L. No. 73–394, § 35, 48 Stat. 996–97. With the exception of recodifications and certain minor changes unimportant for our purposes, the 1934 language is essentially that of the modern Section 1001. *See* Act of Apr. 4, 1938, Pub.L. No. 75–465, § 35, 52 Stat. 197; Act of June 25, 1948, Pub.L. No. 80–772, 62 Stat. 683.

As this brief description of the legislative history indicates, nothing in the textual evolution of the false-statements statute evinces a congressional intent to move to progressively narrower liability. Indeed, the long-term trend is one of expansion. Nevertheless, "[t]he history of § 1001 has led numer-

ous courts to conclude that its broad language generally prohibiting false statements of any sort cannot be taken at face value." Thomas, Annotation, *supra,* at 748. We cannot agree with those courts, particularly in light of the recent admonition in *Hubbard* that "[c]ourts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress." —— U.S. at ——, 115 S.Ct. at 1761. To the extent that courts adopting the "exculpatory no" doctrine have sought to delve even deeper into the reasons behind the 1934 amendment, tailoring liability to only those statements that "pervert the legitimate functions of Government," *Paternostro,* 311 F.2d at 305, their constructions amount to little more than a preference for a narrower over broader statute. That choice, however, is solely within Congress's province.[3]

Some courts have adopted the "exculpatory no" doctrine because of a "concern for Fifth Amendment values implicated by the application of § 1001 to a mere false denial of criminal wrongdoing." Thomas, Annotation, *supra,* at 748–49; *see, e.g., United States v. Medina DePerez,* 799 F.2d 540, 547 (9th Cir. 1986) (discussing "distaste for an application of the statute that is uncomfortably close to the Fifth Amendment") (citation omitted); *Tabor,* 788 F.2d at 718–19 (discussing Fifth Amendment concerns). However, the Fifth Amendment has no application to circumstances in which a person lies instead of remaining silent. *See Rodriguez–Rios,* 14 F.3d at 1049–50; *United States v. Steele,* 933 F.2d 1313, 1320–21 (6th Cir.) (in banc) (individual has constitutional privilege against self-incrimination but no constitutional right to give untruthful statement), *cert. denied,* 502 U.S. 909, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991); *White,* 887 F.2d at 274 (same). The Fifth Amendment's privilege against self-incrimination, therefore, lends no weight whatever to the "exculpatory no" doctrine.

Although we respectfully note the large number of Courts of Appeals that have adopted the "exculpatory no" doctrine, we find no support for it in statutory language

---

**3.** In addition, as the *Rodriguez–Rios* court noted, Congress has considered but failed to pass at least two bills that would again narrow criminal liability under Section 1001. *See* 14 F.3d at 1048 n. 19.

or legislative history. Indeed, it appears to have been fashioned from whole cloth with the result that even among circuits that have adopted it, there is a considerable divergence concerning its content. *Compare United States v. Becker*, 855 F.2d 644, 646 (9th Cir. 1988) (setting out 5–step test which must be satisfied before applying the "exculpatory no" limitation: (i) false statement must not involve a claim against the government; (ii) must be responsive to inquiries initiated by federal agency; (iii) statement must not impair a governmental function; (iv) government inquiry must not have constituted a routine exercise of administrative, as opposed to investigative, responsibility; and (v) a truthful answer would have incriminated the defendant), *with United States v. Steele*, 933 F.2d 1313, 1321 (6th Cir.) (in banc) (rejecting Ninth Circuit test as too broad), *cert. denied*, 502 U.S. 909, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991). Even among those Courts of Appeals adopting the Ninth Circuit test, there is a divergence as to how liberally or narrowly the elements of the test should be applied. *See generally* John E. Davis & Michael K. Forde, *Tenth Survey of White Collar Crime: False Statements*, 32 Am.Crim. L.Rev. 323, 331 n. 38 (1995) (discussing differences between Fourth Circuit's and Ninth Circuit's application of five-part test). There is also a divergence of authority between those circuits that permit an affirmative exculpatory story or statement to qualify as an "exculpatory no," *see e.g., United States v. Myers*, 878 F.2d 1142, 1144 (9th Cir.1989) (applying doctrine to affirmative statements to secret service agents), and those that do not, *see, e.g., United States v. Moore*, 27 F.3d 969, 979 (4th Cir.) ("exculpatory no" doctrine does not extend to misleading exculpatory stories or affirmative statements other than simple denials), *cert. denied*, — U.S. —, 115 S.Ct. 459, 130 L.Ed.2d 367 (1994); *United States v. King*, 613 F.2d 670, 674 (7th Cir.1980) ("exculpatory no" applies only where the responses to government inquiry are merely "no" without affirmative discursive falsehood, under circumstances indicating that defendant is both unaware that he is under investigation, and is not making a claim or seeking employment). *See generally* Davis & Forde, *supra*, at 331 n. 42 (discussing other conflicts of circuit authority); Thomas, Annotation, *supra*, at 751–96 (same).

We add two cautionary points. First, the statute embodies a willfulness requirement. Arguably, to violate Section 1001, a person must know that it is unlawful to make such a false statement. The Supreme Court recently held that the word "willfully" in 31 U.S.C. § 5322(a) requires that a defendant "act [ ] with knowledge that his conduct was unlawful." *Ratzlaf v. United States*, 510 U.S. 135, 137, 114 S.Ct. 655, 657, 126 L.Ed.2d 615 (1994). *But see Rodriguez–Rios*, 14 F.3d at 1048 n. 21 (distinguishing the meaning of "willfulness" in the context of 31 U.S.C. § 5322(a) from the meaning of "willfulness" in the context of 18 U.S.C. § 1001); *United States v. Daughtry*, 48 F.3d 829 (4th Cir.), *cert. granted and judgment vacated on other grounds*, — U.S. —, 116 S.Ct. 510, 133 L.Ed.2d 419 (1995). We do not decide whether knowledge of unlawfulness is an element of this crime, but nothing we say is intended to suggest that the mere denial of criminal responsibility would be sufficient to prove such an element. *See United States v. Grotke*, 702 F.2d 49, 52 (2d Cir.1983) ("[A] negative response cannot serve as proof of the requisite knowledge and willfulness required to convict under 18 U.S.C. § 1001, absent affirmative steps taken by the government to make the reporting requirements of the law known") (quoting *Fitzgibbon*, 619 F.2d at 876). Second, we also do not exclude the possibility that a trier of fact might acquit on the ground that a denial of guilt in circumstances indicating surprise or other lack of reflection was not the product of the requisite criminal intent. However, in the present case, the agents testified that they informed Roman and Brogan that such false statements were illegal and that Roman and Brogan answered the questions in circumstances suggesting deliberation. There was thus sufficient evidence to convict.

We therefore affirm.