UNITED STATES, Appellee

v.

Israel A. SOLIS, Airman, U.S. Air Force, Appellant.

No. 96-0221.
Crim.App. No. 30955.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 1, 1996.

Decided Feb. 20, 1997.

For Appellant: *Captain Jeffrey B. Miller* (USAFR) (argued); *Colonel Jay L. Cohen* and *Captain Harold M. Vaught* (on brief); *Major Ormond R. Fodrea.*

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Jeffery T. Infelise, Major John H. Kongable,* and *Captain Timothy G. Buxton* (on brief); *Colonel Theodore J. Fink.*

*Opinion of the Court*

EFFRON, Judge:

In a contested general court-martial at Edwards Air Force Base, California, officer members convicted appellant of making a false official statement, wrongfully using and distributing cocaine, and wrongfully possessing marijuana, in violation of Articles 107 and 112a, Uniform Code of Military Justice, 10 USC §§ 907 and 912a, respectively.[1] They sentenced him to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed in an unpublished per curiam opinion.

This Court granted review on the following issue:

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY REFUSING TO GRANT RELIEF FOR THE IMPROPER DENIAL, AT TRIAL, OF THE DEFENSE MOTION TO DISMISS CHARGE I AND ITS SPECIFI-

1. Appellant was found not guilty of solicitation to possess cocaine in violation of Article 134, Uni-    form Code of Military Justice, 10 USC § 934.

CATION [ALLEGING A FALSE OFFICIAL STATEMENT] ON THE BASIS OF THE "EXCULPATORY NO" DOCTRINE.

We affirm for the reasons set forth herein.

## I. Background

On New Year's Day 1993, after an extended period of drinking, appellant shared some cocaine with a group of other airmen. After one of his friends implicated appellant in this activity, agents of the local Air Force Office of Special Investigations (AFOSI) called appellant to their office for interrogation.

Appellant waived his rights after receiving applicable warnings under Article 31, UCMJ, 10 USC § 831, and Mil.R.Evid. 305, Manual for Courts–Martial, United States, 1984, and he provided the AFOSI with a written statement. In the statement, appellant asserted: "I do not use drugs. I have no knowledge of drug use on EAFB [Edwards Air Force Base] & I did not use drugs while at home on leave." This statement formed the basis for the charge that appellant made a false official statement in violation of Article 107.[2]

At trial, appellant moved to dismiss this charge and its specification under RCM 907(b)(1)(B), Manual, *supra*, for failure to state an offense. Appellant based his motion on the so-called "exculpatory no" doctrine, which has been applied by a number of federal circuit courts in their interpretation of a separate false-statement statute, 18 USC § 1001 [hereafter Section 1001]. The circuit courts are divided as to the validity of this doctrine,[3] which stands for the proposition that a person who merely gives a negative response to a law enforcement agent cannot be prosecuted under Section 1001.

The military judge denied the motion, citing, *inter alia, United States v. Frazier,* 34 MJ 135 (CMA 1992), and *United States v. Prater,* 32 MJ 433 (CMA 1991), for the proposition that the "exculpatory no" doctrine does not apply to a statement made after a suspect has received rights warnings concerning self-incrimination. The Court of Criminal Appeals agreed, citing *United States v. Dorsey,* 38 MJ 244, 248 (CMA 1993), and *United States v. Sanchez,* 39 MJ 518, 520 (ACMR 1993).[4]

## II. Discussion

### A. Article 107

Article 107 provides:

Any person subject to this chapter who, *with intent to deceive,* signs any false record, return, regulation, order, or other official document, knowing it to be false, or *makes any other false official statement knowing it to be false,* shall be punished as a court-martial may direct.

(Emphasis added). There are four elements that must be proved to obtain a conviction under Article 107 for a false official statement. They are:

(1) That the accused ... made a certain official statement;

(2) That the ... statement was false in certain particulars;

(3) That the accused knew it to be false at the time of ... making it; and

(4) That the false ... statement was made with the intent to deceive.

Para. 31b, Part IV, Manual, *supra.*

The official nature of the statement made by appellant is not an issue on appeal. Although this Court at one time held that Article 107 did not apply to statements made to military investigators,[5] we long since have

---

2. The specification of that Charge provides: "In that [appellant] did, at or near Edwards Air Force Base, California, on or about 6 January 1993, with intent to deceive, make to Special Agent Hank K. Borgsteede, an official statement, to wit: that he, [appellant], does not use drugs, or words to that effect, which statement, was totally false, and was then known by [appellant] to be so false."

3. *See* n. 9 and text, *infra.*

4. The military judge also concluded that appellant's statement to the AFOSI was not covered by the exculpatory no doctrine because it "went beyond a mere negative response." The Court of Criminal Appeals agreed. In light of our views on the applicability of the exculpatory no doctrine, discussed *infra*, we need not address this aspect of the military judge's ruling.

5. *E.g., United States v. Aronson,* 8 USCMA 525, 25 CMR 29 (1957); *United States v. Osborne,* 9

abandoned that position, noting in *United States v. Jackson,* 26 MJ 377, 379 (CMA 1988), that "a servicemember who lies to a law-enforcement agent conducting an investigation as part of his duties has violated Article 107." *Accord United States v. Dorsey* and *United States v. Prater,* both *supra.* Indeed, appellant recognizes in his brief that his response to the AFOSI constituted an official statement for purposes of Article 107.

■ At trial, the prosecution introduced significant evidence of appellant's use of drugs prior to the time of his statement to the AFOSI. That evidence, which was sufficient to sustain appellant's convictions for various drug-related offenses, also provides sufficient evidence to support each of the elements of an Article 107 offense.[6] Appellant's contention, however, is that the "exculpatory no" doctrine precludes a prosecution of an individual who simply denies criminal conduct.

The text of Article 107, on its face, does not preclude prosecution simply because a false statement, made with intent to deceive, amounts to an "exculpatory no." An accused, suspect, or witness who is a member of the armed forces falls within the statutory term "[a]ny person subject to this chapter...." *See* Art. 107. A statement made to the AFOSI, when that agency is conducting an official investigation, is an "official statement" within the meaning of the statute.[7]

When an individual subject to the Code makes an official statement with intent to deceive and with knowledge that the statement is false, that person may be convicted under the plain language of Article 107. For example, when a servicemember witnesses misconduct and subsequently gives a false statement to military investigators about the misconduct with an intent to deceive those investigators, that individual may be prosecuted under Article 107. Thus, if a fellow airman had witnessed appellant's use of illegal drugs but subsequently had told AFOSI that appellant "does not use drugs"—knowing that it was false and with intent to deceive—that witness could be prosecuted under Article 107 for making a false official statement. Likewise, the text of Article 107 does not require that an accused or suspect who lies about his or her own drug use with intent to deceive official investigators be immunized from prosecution under Article 107.

Appellant does not rely on the legislative history of Article 107, and our review of that history does not mandate reading the "exculpatory no" doctrine into the text of Article 107. To the contrary, the legislative history reflects an intent to establish an offense "broader in scope" than preexisting military offenses—one that would be applicable to "all persons subject to this code" and that would "extend[ ] to oral statements...." *Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm.,* 81st Cong., 1st Sess. 1230 (1949).

Moreover, to the extent that initial implementation by the Executive Branch is instructive as to the interpretation of a statute, it is noteworthy that paragraph 186 of the Manual for Courts-Martial, United States, 1951, broadly interpreted Article 107 to include "all documents and statements made in the line of duty," with no mention of the "exculpatory no" doctrine or any exception for statements made during an interrogation. There simply is no indication that Congress intended that persons accused or suspected of offenses should have a license to lie to military investigative organizations, while witnesses who give false statements about the same events should be punished.

## B. Relationship to 18 USC § 1001

Appellant relies upon *dicta* in a number of our previous opinions that have considered the possibility of applying the "exculpatory

---

USCMA 455, 26 CMR 235 (1958); *cf. United States v. Davenport,* 9 MJ 364 (CMA 1980).

**6.** Appellant has not challenged the sufficiency of the evidence under *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

**7.** *United States v. Dorsey,* 38 MJ 244 (CMA 1993); *United States v. Prater,* 32 MJ 433 (CMA 1991); *United States v. Jackson,* 26 MJ 377 (CMA 1988).

no" doctrine to Article 107.[8] Appellant also draws upon interpretations of Section 1001 by various federal circuit courts of appeals. While we have discussed the "exculpatory no" doctrine in a variety of cases, occasionally in tones that suggest a certain sympathy for it, we never have held it to be applicable to a case before this Court.

Although several circuits have accepted the "exculpatory no" doctrine,[9] recent decisions have cast significant doubt upon the validity of the doctrine. The Fifth Circuit, which was the first to embrace the "exculpatory no" doctrine, was the first to reject it. *Compare Paternostro v. United States,* 311 F.2d 298 (1962), *with United States v. Rodriguez–Rios,* 14 F.3d 1040 (1994) *(en banc).* In the most recent decision addressing the doctrine, *United States v. Wiener,* 96 F.3d 35 (1996), the Second Circuit held that "the plain language of Section 1001 provides no support for the doctrine" and that there was "no support for the 'exculpatory no' doctrine in the legislative history of Section 1001." 96 F.3d at 38. Accordingly, the court concluded that the doctrine is a judge-made exception that "amount[s] to little more than a preference for a narrower over broader statute. That choice, however, is solely within Congress' province." 96 F.3d at 39. We agree.

Even if Section 1001 were to be interpreted as requiring an "exculpatory no" doctrine, we would have serious reservations about applying that doctrine to Article 107. While some of our cases have referred by analogy to cases interpreting Section 1001 when interpreting Article 107,[10] we have not held that Article 107 is based upon or dependent upon Section 1001 or cases arising thereunder. In fact, our opinions have made it clear that Article 107 differs from Section 1001 in significant respects. For example, to obtain a conviction under Section 1001, the prosecution must prove affirmatively that the false statement is material to the issue under inquiry, but there is no such requirement for materiality under Article 107.[11]

There is an important reason for the difference. The primary purpose of military criminal law—to maintain morale, good order, and discipline—has no parallel in civilian criminal law. When a squadron commander, an NCO, or an AFOSI agent asks an airman about suspected misconduct, the purpose of the inquiry is not simply to develop a criminal case. An important purpose is to provide that airman's commander with information about the capability of the individual to perform his or her military mission.

Military missions, whether in combat, in peacetime operations, or in training, are characterized by stress, tension, danger, and the need for rapid decisions based upon accurate information. The habits and traits of character developed in peace can make the difference between success or failure in war. Members of the armed forces are expected to give truthful answers to official inquiries, whether in garrison or in the field, in peace or in war. When they fail to meet that standard, Article 107 is available to ensure compliance. There is no exception for a servicemember who is a witness, a suspect, or an accused.

### C. Relationship to Right Against Self–Incrimination

Appellant contends also that the "exculpatory no" doctrine is supported by the Self–Incrimination Clause of the Fifth Amendment and by Article 31. The Second Circuit,

---

**8.** *E.g., United States v. Davenport, supra; United States v. Gay,* 24 MJ 304 (CMA 1987).

**9.** *See Moser v. United States,* 18 F.3d 469, 473–74 (7th Cir.1994); *United States v. Taylor,* 907 F.2d 801, 805 (8th Cir.1990); *United States v. Cogdell,* 844 F.2d 179, 183 (4th Cir.1988); *United States v. Tabor,* 788 F.2d 714, 717–19 (11th Cir.1986); *United States v. Fitzgibbon,* 619 F.2d 874, 880–81 (10th Cir.1980); *United States v. Rose,* 570 F.2d 1358, 1364 (9th Cir.1978); and *United States v.*

*Chevoor,* 526 F.2d 178, 183–84 (1st Cir.1975). The Supreme Court never has ruled on the validity of the exculpatory no doctrine with respect to 18 USC § 1001, and neither has the Third, Sixth, or District of Columbia Circuits.

**10.** *E.g., Dorsey, supra* at 248; *Jackson, supra* at 378; *Davenport, supra* at 370; *United States v. Hutchins,* 5 USCMA 422, 426–27, 18 CMR 46, 50–51 (1955).

**11.** *See United States v. Hutchins, supra.*

in *Wiener,* noted that "[s]ome courts have adopted the 'exculpatory no' doctrine because of a concern for Fifth Amendment values implicated by the application of [Section] 1001 to a mere false denial of criminal wrongdoing." 96 F.3d at 39. In response, the court observed that "the Fifth Amendment has no application to circumstances in which a person lies instead of remaining silent." *Id.*

We agree, and we have held in the past that the "exculpatory no" doctrine is not necessary to implement either Article 31 or the Fifth Amendment. *Dorsey, supra* at 248; *Prater, supra* at 438; *United States v. Sievers,* 29 MJ 72, 73 (CMA 1989); and *United States v. Gay,* 24 MJ 304, 306 (CMA 1987); *cf. Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969). Accordingly, appellant's Fifth Amendment and Article 31 concerns are misplaced.

### III. Policy Considerations

Appellant contends that rejection of the "exculpatory no" doctrine would lead to wholesale overcharging on the grounds that there is a tendency instinctively to deny guilt when first confronted. We understand that concern, particularly in light of the number of cases reaching this Court in which an accused has been convicted not only of the offense for which he originally was targeted but also under Article 107 for lying when first confronted by law enforcement agents.

Overcharging presents at least two significant concerns. First, an unnecessary layering of charges to transform what is essentially a single crime into multiple offenses can raise questions among fellow servicemembers and the public about the fairness of the military justice system. Second, such charging needlessly can complicate and delay the proceedings by requiring additional discovery, witnesses, and review of collateral issues, that is inconsistent with the fundamental goal *of prompt disciplinary action.* Such policy arguments, however, must be directed to Congress and the President for consideration, not to this Court.

In that regard, we note that the President has issued guidance concerning Article 107 in paragraph 31c(6), Part IV, Manual, *supra,* as follows:

(a) *Person without an independent duty or obligation to speak.* A statement made by an accused or suspect during an interrogation is not an official statement within the meaning of the article if that person did not have an independent duty or obligation to speak. But see paragraph 79 (false swearing).

(b) *Person with an independent duty or obligation to speak.* If a suspect or accused does have an independent duty or obligation to speak, as in the case of a custodian who is required to account for property, a statement made by that person during an interrogation into the matter is official. While the person could remain silent (Article 31(b)), if the person chooses to speak, the person must do so truthfully.

Because this guidance is not based upon the statutory elements of the offense, it does not impose upon the prosecution an affirmative obligation to prove such an independent duty or obligation. Whether the guidance can be invoked by an accused to defend against a charge under Article 107 is another matter.

The guidance in the Manual could be viewed as serving at least three different purposes. First, it could be seen as nothing more than an expansive description of *dicta* from this Court's decisions that predate the 1984 revision of the Manual, with no intent to limit prosecutions. Second, it could be viewed as protecting an accused against overcharging. Third, it could be viewed as guidance for the conduct of investigations; otherwise, a suspect, who initially provides a false statement, might have a substantial disincentive against coming forward subsequently with the truth about an offense if the consequence of being truthful were to compound his punishment with the potential for a punitive separation and an additional 5 years' confinement for the initial false official statement.

We note, however, that appellant has not relied upon the Manual's provisions. Accordingly, the question remains open whether these provisions are intended to establish a

procedural right that can be invoked by an accused or whether they constitute internal guidelines intended only to regulate government conduct. *See generally United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)(violation of Internal Revenue Service rule regarding recording conversations with taxpayers, which is required neither by the Constitution or by statute, does not require exclusion of evidence).

### IV.   Decision

In sum, we hold today that the "exculpatory no" doctrine is not supported by the language of Article 107 and is not compelled by any self-incrimination concerns. Evaluation of any arguments that might support the desirability of the doctrine is within the province of Congress, in considering whether to amend Article 107, and of the President, in considering whether to restrict prosecutions under it.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge CRAWFORD concurs.

COX, Chief Judge (concurring):

I agree that the "exculpatory no" doctrine does not provide a defense to a prosecution for making a false official statement under Article 107, Uniform Code of Military Justice, 10 USC § 907. I reserve judgment, however, as to whether a military member who initially denies involvement in a criminal enterprise to a military police investigator may be prosecuted under this article in light of paragraph 31c(6)(a), Part IV, Manual for Courts–Martial, United States (1995 ed.), which provides, "A statement made by an accused or suspect during an interrogation is not an official statement within the meaning of the article if that person did not have an independent duty or obligation to speak." This question was not litigated here. *But see United States v. Jackson*, 26 MJ 377 (CMA 1988) (appellant *not* a suspect).

GIERKE, Judge (concurring in part and in the result):

In this case appellant was properly warned of his rights, waived them, and then gave a response that went beyond a simple denial of guilt. We previously have held that the "exculpatory no" defense is not available under these circumstances. *United States· v. Prater*, 32 MJ 433, 437 (CMA 1991). Accordingly, I concur in the result.

I am not sure, however, that Congress intended to criminalize a suspect's exclamation, "I didn't do anything wrong!" as he or she is being apprehended. Accordingly, I reserve judgment on the question of whether a simple "exculpatory no" is a criminal offense regardless of the circumstances.

SULLIVAN, Judge (concurring in the result):

Article 107, Uniform Code of Military Justice, 10 USC § 907, states:

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or *makes any other false official statement* knowing it to be false, shall be punished as a court-martial may direct.

(Emphasis added.) This Court has held that Article 107 can be applied to statements given by a servicemember to police who suspect him of an offense, once he has been advised of his rights and chosen to speak. *See United States v. Dorsey*, 38 MJ 244, 248 (CMA 1993); *United States v. Frazier*, 34 MJ 135 (CMA 1992); *United States v. Prater*, 32 MJ 433, 438 (CMA 1991); *United States v. Gay*, 24 MJ 304, 306 n. 3 (CMA 1987). In this case, appellant waived his Article 31, UCMJ, 10 USC § 831, rights and made a false official statement to the police. Although there may be an "exculpatory no" doctrine, under our case law and the circumstances of this case it does not exist here. I would affirm on the basis of our present case law.