**[PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

———————————————————

No. 96-3515

———————————————————

D.C. Docket No. 96-107-CR-J-20

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS HUMBERTO LOPEZ-IRAETA,

Defendant-Appellant.

————————————————————————————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————————————————————————————

**(November 21, 1997)**

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

HATCHETT, Chief Judge:

The only issue in this appeal is whether the "exculpatory no" doctrine provides an affirmative defense to prosecutions under 18 U.S.C. § 911. We decline to extend the doctrine beyond its application in the prior decisions of this court and affirm the appellant's conviction and sentence.

## BACKGROUND

On the morning of August 1, 1996, agents of the United States Border Patrol and the Drug Enforcement Agency conducted transportation checks at a Greyhound bus station located in Jacksonville, Florida. The agents observed appellant Carlos Humberto Lopez-Iraeta and noticed that he spoke English with a considerable "Central American accent." Approaching Lopez-Iraeta, the agents requested permission to ask him some questions. Lopez-Iraeta assented to the questioning. The agents first asked Lopez-Iraeta whether he was a United States citizen, and he responded affirmatively. As the questioning progressed, however, the agents elicited inconsistencies in Lopez-Iraeta's responses.

When the agents confronted Lopez-Iraeta with these inconsistencies, he admitted that he was a citizen of Honduras. Lopez-Iraeta claimed, however, to be a resident alien and contended that he had falsely claimed to be a citizen of the United States because he did not have his resident alien card with him. Pursuant to a consensual search, the agents found in Lopez-Iraeta's possession a Social Security card issued to another person and a small amount of marijuana. The agents placed Lopez-Iraeta under administrative arrest for an immigration violation. The agents subsequently searched immigration records and discovered that Lopez-Iraeta was an illegal alien of Honduran citizenship.[1] Lopez-Iraeta

---

[1] Lopez-Iraeta's work visa expired almost five years prior to his arrest, and he had failed to appear at a hearing to determine his request for political asylum.

rejected the government's proposal that he leave the country voluntarily within thirty days and asked to appear before an immigration judge.

On August 7, 1996, a grand jury in the Middle District of Florida issued a one-count indictment charging Lopez-Iraeta with falsely claiming United States citizenship in violation of 18 U.S.C. § 911.  At trial, Lopez-Iraeta admitted that he lied to the agents

> [b]ecause I would have been, I would have been--they would have, they would have found me an illegal alien.  I would have been incarcerated in a-- I would have incriminate me--you know, or they deport me, you know. That's what I didn't like.  That's the only reason I lied.

The district court rejected Lopez-Iraeta's request to instruct the jury regarding the exculpatory no doctrine.  The court stated that it was "not willing in this case, because of the nature of the Border Patrol's function, to extend to [section] 911 of Title 18 the 'exculpatory no' doctrine that this circuit says basically only applies in [section] 1001 cases."  The jury found Lopez-Iraeta guilty of the sole count in the indictment, and the district court sentenced him to four months of imprisonment and one year of supervised release.

## DISCUSSION

Lopez-Iraeta urges us to extend the policy known as the "exculpatory no" doctrine to violations of 18 U.S.C. § 911.  The exculpatory no doctrine is a judicially created exemption from prosecution under 18 U.S.C. § 1001 for providing false statements to an agent of the United States.  See United States v. Tabor, 788 F.2d 714, 717 (11th Cir. 1986); see also United States v. Berisha, 925 F.2d 791, 796 (5th Cir. 1991).  The doctrine

3

holds that the element of making a false or fraudulent statement to a government agent, necessary to support a conviction for making such a statement, is lacking if the defendant merely answers a question in the negative, rather than affirmatively providing false or fraudulent information.  United States v. Ali, 68 F.3d 1468, 1474 (2d Cir. 1995).  In short, the doctrine "excludes from the definition of 'statements' under § 1001 mere exculpatory denials made during government investigations."  United States v. Barr, 963 F.2d 641, 645-6 (3d Cir.), cert. denied, 506 U.S. 1033 (1992) (internal quotations omitted).[2]

In Paternostro v. United States, 311 F.2d 298 (5th Cir. 1962), this court's predecessor became the first federal circuit court to recognize this doctrine, holding that an "'exculpatory no' answer without any affirmative, aggressive or overt misstatement on the part of the defendant does not come within the scope of the statute, 18 U.S.C.A. § 1001."  Paternostro, 311 F.2d at 309.  The Fifth Circuit excluded from prosecution under section 1001 a defendant's negative exculpatory answers to a government agent provided during an investigatory conference that the defendant did not initiate.  Paternostro, 311 F.2d at 309.  The court later interpreted the bases for the Paternostro holding in United States v. Lambert, 501 F.2d 943 (5th Cir. 1974).  In Lambert, the Fifth Circuit implied that the Paternostro court narrowly interpreted the term "statement" under the statute to exclude involuntary and generally negative exculpatory responses.  Lambert, 501 F.2d at 946.  Lambert also provided, as dictum, a second justification for the exculpatory no

_____

[2] This court reviewed the history of section 1001 and the exculpatory no doctrine in Tabor, 788 F.2d at 716-718.  See also Timothy I. Nicholson, Just Say "No":  An Analysis of the "Exculpatory No" Doctrine, 39 Wash. U. J. Urb. & Contemp. L. 225 (1991).

4

doctrine, stating that it developed as a result of a "latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment." Lambert, 501 F.2d at 946 n.4.

We adopted this dictum in United States v. Payne, 750 F.2d 844 (11th Cir. 1985). In Payne, this court extended the exculpatory no doctrine to prosecutions for false statements in relation to Federal Land Bank forms under 18 U.S.C. § 1006. Payne, 750 F.2d at 848.[3] In arguing against the extension of the doctrine beyond section 1001, the government maintained that "the doctrine was designed to limit the broad scope of 18 U.S.C. § 1001 and would be inappropriate in the context of a narrow false statement statute such as 18 U.S.C. § 1006, which applies only to persons 'connected' with Federal Land Banks and other similar institutions." Payne, 750 F.2d at 862. The court found this argument unpersuasive, however, because of Lambert's concern for the abridgement of Fifth Amendment rights. The court held that "[i]t is primarily this solicitude for Fifth Amendment values that prevents us from attaching criminal liability to conduct consisting

_____

[3] Section 1006 states:

> Whoever, being an officer, agent or employee of or connected in any capacity with the Federal Deposit Insurance Corporation, . . . or any lending, mortgage, insurance, credit or savings and loan corporation or association authorized or acting under the laws of the United States . . . with intent to defraud any such institution or any other company . . . makes any false entry in any book, report or statement of or to any such institution . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1006 (1994).

of mere exculpatory denials of wrongdoing." Payne, 750 F.2d at 862. The court therefore extended the doctrine to prosecutions under section 1006 but limited its application to "cases involving substantial and real hazards of self-incrimination." Payne, 750 F.2d at 863.

We reject the invitation to further extend the exculpatory no doctrine to prosecutions under 18 U.S.C. § 911. The federal courts established this doctrine as a necessary limitation upon the broad scope of section 1001. See Payne, 750 F.2d at 862; see also United States v. Cogdell, 844 F.2d 179, 182-3 (4th Cir. 1988). As one circuit noted, a literal reading of section 1001 reveals that "virtually any false statement, sworn or unsworn, written or oral, made to a government employee could be penalized as a felony." United States v. Bedore, 455 F.2d 1109, 1110 (9th Cir. 1972).[4] As this court has

---

[4] The statute reads as follows:

(a) Except as otherwise provided in this section, whoever, in any manner within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully --

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C.A. § 1001 (West Supp. 1997). Congress amended section 1001 in 1996 to

noted, the exculpatory no doctrine "applies a limiting principle to [section] 1001 to prevent its broad language from being used to prosecute a person who answers [using] an exculpatory 'no' . . . ." United States v. Fern, 696 F.2d 1269, 1276 n.8 (11th Cir. 1983).

Unlike with section 1001, Congress promulgated section 911 to prohibit a narrow class of false statements. Section 911 states that "[w]hoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 911 (1994). Both the wording and application of section 911 are substantially narrower than that of section 1001. Contrary to the panel in Payne, we believe that this distinction is sufficient to preclude the extension of the exculpatory no doctrine.[5]

**AFFIRMED**.

_____

insert the words "material" and "materially" and to restrict the application of the statute within judicial and legislative proceedings. See False Statements Accountability Act of 1996, Pub. L. No. 104-292, § 2, 110 Stat. 3459 (Oct. 11, 1996). Despite the addition of a materiality element, the statute still broadly prohibits false statements made to government agents.

[5] We note that no other circuit has followed the Payne decision or extended the exculpatory no doctrine beyond section 1001. In fact, two circuits have affirmatively rejected the doctrine altogether, including the Fifth Circuit, the first circuit to implement it. See United States v. Wiener, 96 F.3d 35, 37 (2d Cir. 1996), cert. granted, 117 S. Ct. 2430 (1997); United States v. Rodriguez-Rios, 14 F.3d 1040, 1041 (5th Cir. 1994) (en banc).