UNITED STATES, Appellee

v.

**Randolph S. MILLER, Second Lieutenant
U.S. Army, Appellant.**

No. 95–0992.
Crim.App. No. 9300501.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 3, 1996.

Decided May 12, 1997.

For Appellant: *Captain Eric S. Krauss*
(argued); *Colonel Stephen D. Smith* and *Major J. Frank Burnette* (on brief); *Lieutenant
Colonel John T. Rucker* and *Lieutenant
Colonel Michael L. Walters.*

For Appellee: *Captain John M. Bergen*
(argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak, Captain Jinny
Chun, Captain John W. O'Brien* (on brief);
*Captain Virginia G. Beakes.*

*Opinion of the Court*

SULLIVAN, Judge:

In January and March of 1993, appellant
was tried by a general court-martial composed of members sitting at Fort Ord, California. Contrary to his pleas, he was found
guilty of missing movement, making a false
official statement, drunk driving, assault and
battery, perjury, and conduct unbecoming an
officer, in violation of Articles 87, 107, 111,
128, 131, and 133, Uniform Code of Military

Justice, 10 USC §§ 887, 907, 911, 928, 931, and 933, respectively. He was sentenced to dismissal, 5 years' confinement, and total forfeitures for 5 years. On May 5, 1994, the convening authority approved the sentence but suspended confinement in excess of 325 days for 2 years. On May 18, 1995, the Court of Criminal Appeals affirmed the findings and the approved sentence without opinion.

On November 22, 1995, we granted appellant's petition to consider the following issues:

### I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING THE HEARSAY STATEMENTS OF MS. FRANKIE WHITENER UNDER MILITARY RULE OF EVIDENCE 803(2), EXCITED UTTERANCE.

### II

WHETHER THE MILITARY JUDGE'S RULING THAT DENIED A DEFENSE MOTION TO SUPPRESS STATEMENTS MADE BY APPELLANT TO OFFICER GREATHOUSE WAS CLEARLY ERRONEOUS BECAUSE THE OFFICER OBTAINED THOSE STATEMENTS AS A RESULT OF A "CUSTODIAL" INTERROGATION WITHOUT REQUIRED WARNINGS IN VIOLATION OF APPELLANT'S FIFTH AMENDMENT RIGHTS AGAINST SELF–INCRIMINATION. [Citations omitted.]

We hold that any error in admitting Ms. Whitener's out-of-court statements was harmless in view of other evidence admitted in this case. Art. 59(a), UCMJ, 10 USC § 859(a); see generally United States v. Lee, 28 MJ 52, 54–55 (CMA 1989) (application of harmless-error rule to erroneous admission of evidence under excited utterance doctrine). We also hold that the military judge did not err in determining that appellant was not in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when he made his own pretrial statement to Officer Greathouse. *See generally Thompson v. Keohane*, —— U.S. ——, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *United States v. Schake*, 30 MJ 314 (CMA 1990).

Officer Greathouse of the Marina Department of Public Safety (California) testified that, on the afternoon of August 9, 1992, Ms. Frankie Whitener appeared at the police st.-tion and stated that she wished to file a complaint. He testified that, at that time, "[s]he was very upset, appeared very agitated, and very frustrated." He described her as "frightened" and further stated that "her clothing was somewhat disheveled." He also observed an abrasion under her left eye, a bruise on her arm, and redness on her neck.

At that point in Officer Greathouse's testimony, trial counsel informed the military judge that he intended "to overcome" a potential objection to hearsay. The military judge excused the members and conducted a session under Article 39(a), UCMJ, 10 USC § 839(a). During that session, trial counsel argued that Officer Greathouse's description of Ms. Whitener's condition was sufficient to establish that any statement she made to the officer was admissible as an excited utterance under the exception to the hearsay rule in Mil.R.Evid. 803(2), Manual for Courts–Martial, United States, 1984.

Defense counsel asked Officer Greathouse "how much time elapsed between" the incident and the point where Ms. Whitener appeared at the station. Officer Greathouse replied that it was about 15 hours. Defense counsel then argued that this lapse of time attenuated the required potential for emotion and, thus, removed Ms. Whitener's statement to Officer Greathouse from the ambit of Mil. R.Evid. 803(2). The military judge disagreed and overruled the objection.

When Officer Greathouse resumed his testimony, he told the members that Ms. Whitener related to him that the evening before, during an argument, appellant, her fiancé, had grabbed her by the arm and thrown her against a wall. She also stated that he then punched her with his fist on the left side of the face. Ms. Whitener also told him that,

following the altercation, she had gone to the home of a friend.

Officer Greathouse further testified that, when Ms. Whitener came to the station, a bruise on her face was clearly visible, and there were also bruises on her arm which "appeared to be" finger impressions. Finally, Officer Greathouse testified that Ms. Whitener told him that she and appellant had a second "altercation, just shortly before coming to the Marina Department of Public Safety to report the incident."

Prior to his pleas, appellant also moved to suppress a pretrial statement he gave to Officer Greathouse. In that statement, appellant admitted grabbing Ms. Whitener's arm, pushing her against the wall, and striking her in the face with the back of his hand. Appellant implied in this statement that he hit the alleged victim in the face accidentally while protecting himself from her physical attack.

Officer Greathouse testified about the circumstances surrounding appellant's pretrial statement. He said that, shortly after Ms. Whitener reported the assault, he telephoned appellant, identified himself as a Public Safety Officer, and informed appellant that his fiancee had filed a complaint concerning an incident in which he had injured her. He then asked appellant if he would come to the station to discuss the incident. Appellant replied, "Sure, no problem, I'll be right there." They made arrangements to meet at the door of the station. About 5 minutes later, appellant appeared. Greathouse testified that he met appellant at the door on the first floor of the station, unlocked it (it was Sunday), and took appellant to an interview room where he had prepared a video tape to record the meeting.

Officer Greathouse testified that, after entering the interview room with appellant and taking seats, he told appellant, "This is what [Ms. Whitener] told me what happened. . . . What's your side?" He stated that appellant was not in custody and was "free to leave" if he wanted. Finally, Greathouse testified that appellant was not then a suspect in any offense, as Greathouse did not have sufficient information to conclude that a crime had been committed. He was particularly concerned about the delay between the alleged assault and Ms. Whitener's report.

On cross-examination, Officer Greathouse testified that as a Public Safety Officer, he was a "California Certified Police Officer." In addition, he was trained as a "California Certified Fire-fighter" and was then undergoing training in the treatment of medical emergencies. He had "arrest power" and, on the day in question, had been employed as a Public Safety Officer for about one and one-half years.

Greathouse testified that the door to the Public Safety Building was always locked and that he had to unlock it from the inside to admit appellant. He had taken appellant to the second floor because the first floor was an open bay area occupied by fire engines and other similar equipment. There were no facilities on that floor where he could talk with appellant comfortably. As he stated, appellant "had been kind enough to come down to the station. The least I could do was offer him a chair to sit in." The room he chose was an interview room that locked from the inside, but the door was "ordinarily unlocked." He did not relock the door after they entered. However, he did testify that he did not "specifically" tell appellant that "he was free to leave" the room if he wished.

Officer Greathouse further described the locks on the station doors as being "panic hardware," that is-the doors were designed to be opened from the inside by simply pushing on a bar. While the locks on the doors prevented people from entering, they did not keep people from leaving.

Appellant testified on this motion and told the military judge that Officer Greathouse called him, identified himself as being with the Marina Public Safety Office, and informed him that Ms. Whitener was at the station and had reported an altercation between them. The officer then told appellant that he needed to talk to him about the matter.

Appellant went to the station and found the entrance locked. He pressed a call box and identified himself. Officer Greathouse

came to the door and admitted him. Greathouse introduced himself, shook appellant's hand in a cordial manner, and then escorted him to a room in the basement of the building where they could be more comfortable. They found the room locked, and Greathouse had to look for the key. The room was about 8 feet by 10 feet, and had no windows. The door was shut. At no time did Greathouse tell appellant that he was free to leave the room or the building. The interview lasted about 25 minutes.

During cross-examination, appellant admitted that Officer Greathouse was not mean but was "very cordial" during the "entire" interview. He also admitted that when Greathouse left him to get the key, he was not attended by anyone. However, he stated that he did not believe that he was "free" to leave because Greathouse was a police officer and he (appellant) was in a police station.

When examined by the military judge, appellant stated that he was "intimidated" by Officer Greathouse. He explained that this feeling stemmed from the fact that Greathouse was in uniform and armed. However, he also stated that he did not ask Officer Greathouse if he could leave or tell him that he wished to talk with an attorney. Finally, he testified that he was 30 years old and had about 13 years of service at the time of this incident.

### I

■ The initial question before this Court is whether the military judge erred in admitting the hearsay statements of Ms. Whitener through the testimony of Officer Greathouse. The prosecution offered and the military judge admitted this evidence as an excited utterance under Mil.R.Evid. 803(2). *See United States v. Chandler*, 39 MJ 119, 123 (CMA 1994); *United States v. Jones*, 30 MJ 127 (CMA 1990); *United States v. Arnold*, 25 MJ 129 (CMA 1987). Appellant, however, asserts that a 15–hour time lapse between

the alleged assault and its being reported to the police officer created a strong presumption against admission of Ms. Whitener's complaints as an excited utterance. He also argues that no other circumstances in the record justify their admission under this hearsay exception. We conclude that any error in admitting this evidence under this rule was harmless. Art. 59(a), UCMJ, 10 USC § 859(a), and Mil. R. Evid. 103(a).[1]

Initially, we note that evidence of Ms. Whitener's out-of-court complaint was, in all necessary respects, cumulative of other evidence properly admitted in this case. In particular, appellant's pretrial statement (*see* Part II of this opinion) and Officer Greathouse's observations of the physical condition of Ms. Whitener established the essential facts to convict appellant of assault. In this regard, we note that appellant was charged with assault under Article 128, as follows:

> SPECIFICATION: In that [appellant] did at Marina, California, on or about 9 August 1992, *unlawfully throw Ms. Frank Lynn Whitener against a wall twice causing her to hit her head* and then unlawfully punched Ms. Frank Lynn Whitener on the left side of her face with a closed fist.

(Emphasis added.)

■ Both the alleged victim in her out-of-court statements and appellant in his pretrial statement admitted that appellant grabbed Mrs. Whitener and pushed her against a wall in a fit of anger. *Cf. United States v. Pemberton*, 16 USCMA 83, 36 CMR 239 (1966) (victim's and accused's story differ as to who was aggressor). Therefore, he was guilty of assault on the basis of his admission of this conduct alone, regardless of his guilt of the punching portion of this specification. *See United States v. Sever*, 39 MJ 1, 4 (CMA 1994) (" '[b]odily harm' means any offensive touching"); *United States v. Snow*, 82 F.3d 935, 941 (10th Cir.1996)(any error in admis-

---

1. At the time Ms. Whitener reported appellant's assault, she was engaged to marry appellant. Between the time of the offense and this trial, they were married. There is no issue of confrontation in this case. Ms. Whitener was available and did testify for appellant both on the merits

and during the sentence phase. She was asked no questions by either side as to her pretrial statement on the assault incident. *See generally United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *United States v. Casteel*, 45 MJ 379, 382 (1996).

sion of evidence which was minor addition to prosecution case was harmless).

■ Also, even if the punch-in-the-face language of the specification could not be considered surplusage, appellant was guilty of this assault under his own pretrial statement concerning this encounter. See generally Lee, 28 MJ at 55. It was uncontroverted in this case that appellant was the aggressor in this domestic struggle who either intentionally or inadvertently struck his fiancée during the fight which he instigated. See United States v. Cardwell, 15 MJ 124 (CMA 1983)(self-defense not available to aggressor); United States v. Femmer, 14 USCMA 358, 34 CMR 138 (1964) (accident defense not available where predicate act intentional); cf. United States v. Curry, 38 MJ 77 (CMA 1993) (accident as commonly understood might negate specific-intent requirement but is not complete defense). Moreover, the record in this case indicates that, after the military judge's ruling, evidence was admitted of a second altercation occurring between Ms. Whitener and appellant about one hour before her complaint to Officer Greathouse. On retrial, it is possible that a stronger case could be made for admission of the challenged evidence as an excited utterance resulting from the second altercation.[2] See United States v. Napier, 518 F.2d 316, 318 (9th Cir.1975) (display of photograph of defendant 8 weeks after assault was sufficient startling event). In view of the above, no substantial or material prejudice resulted from the judge's evidentiary ruling.

## II

■ The second granted issue asks whether the military judge erred in holding appellant was not in custody, so Miranda warnings were not required before his questioning by Officer Greathouse. See generally Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.

1602, 16 L.Ed.2d 694 (1966); Schake, 30 MJ at 318–19. In the recent Thompson case, the Supreme Court delineated the standard of appellate review required in this situation as follows:

The ultimate "in custody" determination for Miranda purposes, we are persuaded, fits within the [mixed-question-of-law-and-fact] cases. Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting Mathiason, 429 U.S., at 495, 97 S.Ct., at 714). The first inquiry, all agree, is distinctly factual. . . . The second inquiry, however, calls for application of the controlling legal standard to the historical facts. This ultimate determination, we hold, presents a "mixed question of law and fact" qualifying for independent review.

—— U.S. at ——, 116 S.Ct. at 465 (footnote omitted).

The military judge denied appellant's motion to suppress his pretrial statements to Officer Greathouse. The judge explained his ruling as follows:

MJ: The defense motion to suppress is denied. The court finds by a preponderance of the evidence:

First, that the accused was not under arrest when he came into the Public Safety Building.

---

2. Normally, the correctness of a judge's ruling admitting or excluding evidence is to be assessed in light of the evidence of record before him at the time of the ruling. See 1 Wigmore, Evidence § 17 at 787 (Tillers rev.1983). However, in determining prejudice resulting from the admission of evidence, the entire record can be considered. See Boren v. Sable, 887 F.2d 1032, 1034 (10th Cir.1989); Herndon v. Seven Bar Flying Service, Inc., 716 F.2d 1322, 1326 (10th Cir.1983).

Secondly, that the accused voluntarily accepted the invitation to talk with Officer Greathouse.

Third, that the accused knew the subject matter of the interview.

Fourth, that the accused was a voluntary participant in the interview.

Fifth, that the accused was not in custody or undergoing a custodial interrogation when he talked to Greathouse.

Sixth, that the Fifth Amendment rights under *Miranda versus Arizona* were never triggered; therefore, the accused's statements were voluntary and are admissible.

We conclude that findings of fact 1–4 are fully supported by evidence of record and are not clearly erroneous. *See United States v. Schake, supra.* We further agree with conclusions of law 5–6 reached by the judge to the effect that, given the factual circumstances in this case, a reasonable person would have felt that he was at liberty to terminate the interrogation and leave. *Thompson v. Keohane, supra; see United States v. Murray,* 89 F.3d 459, 462 (7th Cir.1996) (person in traffic stop sitting in back seat of police cruiser not "in custody" absent conduct overcoming will); *United States v. McKinney,* 88 F.3d 551, 554 n. 2 (8th Cir.1996); *United States v. Ventura,* 85 F.3d 708, 710–11 (1st Cir.1996); *cf. United States v. Ali,* 86 F.3d 275, 276–77 (2d Cir. 1996) (held traveler who is "asked to step away from" boarding area, has his travel documents removed, and is "surrounded by seven officers with visible handguns," two of whom testified he was not free to leave, was "in custody").

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.