UNITED STATES, Appellee,

v.

Paul S. BLACK, Sergeant,
U.S. Army, Appellant.

No. 96–0121.
Crim. App. No. 9400686.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 1, 1996.

Decided Sept. 16, 1997.

Cox, C.J., filed concurring opinion.

Sullivan and Gierke, JJ., filed opinions concurring in part and dissenting in part.

For Appellant: *Captain Eric S. Krauss* (argued); *Lieutenant Colonel John T. Rucker* (on brief); *Colonel Stephen D. Smith, Lieutenant Colonel Michael L. Walters,* and *Major J. Frank Burnette.*

For Appellee: *Captain Joanne P. Tetreault* (argued); *Colonel John M. Smith* and *Lieutenant Colonel Eva M. Novak* (on brief); *Captain Eugene E. Baime.*

*Opinion of the Court*

EFFRON, Judge:

At a general court-martial composed of officer and enlisted members held at Fort Stewart, Georgia, appellant was convicted, contrary to his pleas, of making a false official statement, assault consummated by a battery (2 specifications), and committing indecent acts, in violation of Articles 107, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 928, and 934, respectively.[1]

The members sentenced appellant to a dishonorable discharge, confinement for 6 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed in a unanimous unpublished opinion.

■ We granted review of the following issue:

WHETHER THE "EXCULPATORY-NO" DOCTRINE BARS PROSECUTION UNDER ARTICLE 107, UCMJ, FALSE OFFICIAL STATEMENT, FOR MERELY DENYING MEMORY OF EVENTS INQUIRED INTO BY CRIMINAL INVESTIGATORS.

In a recent opinion issued subsequent to our grant of review in the present case, we held that the "exculpatory-no" doctrine does not bar prosecutions under Article 107. *United States v. Solis,* 46 MJ 31 (1997). While that decision normally would have been dispositive of the granted issue, our consideration of the evidence related to the granted issue has convinced us that the evidence is legally insufficient to sustain the finding that appellant's statement was a false official statement. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979).

I

■ In a prosecution under Article 107, the Government must prove that the accused made an official statement; that the statement was false; that the accused knew it was false when he made it; and that he made it with an intent to deceive. *See* para. 31b, Part IV, Manual for Courts–Martial, United States (1995 ed.). The false-official-statement specification, as found by the members, stated that appellant,

did, . . . on or about 18 August 1993, with intent to deceive, make an official statement, to wit: I don't remember doing it (roughhousing with the girls[,] could you have touched them on the breast?), which statement was totally false, and was then known by [appellant] to be so false.[2]

This allegedly false statement was made during an interrogation by agents of the Criminal Investigation Command that took place more than a year after the events under investigation allegedly occurred. The Government thus was obligated to prove not only that appellant did, in fact, remember the referenced details of events that occurred

1. The members acquitted appellant of rape, carnal knowledge, kidnapping, and adultery, violations of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively.

2. The false-statement specification, as referred to trial, stated that appellant "did . . . on or about 18 August 1993, with intent to deceive, make an official statement, to wit: I never took either of the girls into my bedroom. When they came into the house it was both of them in the house together; I couldn't tell you (if the name 'titty twister' came up); and I don't remember doing it (roughhousing with the girls[,] could you have touched them on the breast?), which statement *was totally false, and was then known by* [appellant] *to be so false.*" The members found appellant guilty of only that portion of the statement involving a denial of memory.

more than a year prior to the interrogation, but also that when appellant said he did not remember, he knew he was lying and that he lied with intent to deceive government officials.

## II

The question of what constitutes the "truth" has challenged philosophers throughout the millennia of recorded history. Although our judicial responsibilities do not obligate us to engage in philosophical discourse, we are required to determine whether a person convicted of making a "false" official statement has uttered words that, under applicable legal principles, can be determined to be untrue for purposes of the law.

■ In order to prove that a statement is "false" under Article 107, the Government must introduce two different types of admissible evidence: First, evidence to prove the content of the statement in question; second, evidence to prove other matter that so clearly contradicts the challenged content of that statement that a rational factfinder would be convinced beyond a reasonable doubt that the other matter is true and the challenged statement is false.

The content of an allegedly false official statement made during an interrogation normally involves a statement as to the occurrence or non-occurrence of an observable set of circumstances. For example, the challenged statement might consist of an alibi, the specific details of an event, a denial that the accused participated in an event, or a denial that the accused participated in the manner alleged. In any such case, the Government must introduce not only the pertinent content of the accused's statement, but also additional evidence to clearly contradict the accused's statement. Typically, this second type of evidence consists of facts that, for example, would contradict an alibi, set forth different details of an event, or otherwise counter an accused's denials.

■ When the pertinent content of an accused's statement is an assertion that he "does not remember" a specific act or details of an event, as in this case, it is not sufficient for the Government to introduce evidence of the occurrence or non-occurrence of the act or event that is the subject of the statement. The issue in this case is the existence or non-existence of memory of the act rather than whether the act itself occurred. Accordingly, the Government in this framework must introduce evidence proving that appellant did, in fact, have such a clear memory of the act or details of the event in issue that he was obligated to provide that information when asked about it during an official interrogation.

We are unaware of any objective test to definitively establish that an individual actually remembered a specific fact when the individual denies memory of it. There may well be situations where the Government can offer sufficient circumstantial evidence to prove, for purposes of Article 107, that the accused lied about the existence of this memory. Such circumstances might include a contemporaneous statement of memory, a subsequent admission that the denial of memory was a lie, or proof that the matter under inquiry involved a military duty of such significance that it would be implausible for the accused to not remember the details. We reserve judgment as to whether any such evidence would be sufficient in a particular case.

■ This, however, is not such a case. The relevant events occurred off-duty, more than a year prior to the interrogation. During questioning, appellant specifically denied the alleged participation in rape, consensual sexual intercourse, and a variety of related details. He acknowledged that he, his son, and his younger brother had engaged in "roughhousing," including wrestling, with two young girls, both at a playground and in his back yard. During questioning, he was asked whether he had pinched the girls on the breast, and he responded, "No." He then was asked the question that formed the basis for the false-statement conviction: "When roughhousing with the girls[,] could you have touched them on the breast?" He responded: "I don't remember doing it."

Unlike the question about pinching, which clearly directed appellant's attention to specific, inappropriate behavior, this question about touching was vague and used speculative wording rather than definitive terms. In the context of an interrogation about very serious alleged sexual misconduct and in view of the sequence of the questions and the speculative nature of the second question, it is understandable why appellant, who acknowledged wrestling and roughhousing with the girls, was not prepared to speculate as to the possibility of any touching, including innocent or inadvertent touching.

In a statement made during an interrogation 5 days later, on August 23, appellant was asked directly about the act of pinching. Although he had responded to a similar question by saying "no" on August 18, on August 23 he acknowledged that he had pinched one of the girls on the breast. The interrogation, however, contained no follow-up question that asked him to address the basis for his August 18 statement regarding his lack of memory of any touching.

During an interrogation on August 24, appellant stated: "Up to this point, I have denied any kind of physical contact which could be interpreted as sexual because I was afraid of going to jail based on her statement." The August 24 statement, however, concerned other aspects of the allegations and did not address the alleged pinching or other touching of the victim's breast. Moreover, and more importantly to this appeal, it did not contain any follow-up questions regarding potential discrepancies between the August 18 and August 23 statements; and there were no inquiries relating to appellant's denial of memory on August 18.[3]

### III

This case might have come to us in a very different posture. For instance, for reasons that are not apparent from the record, the Government did not charge appellant with making a false official statement on August 18 when he expressly denied the specific allegation of pinching the girls on the breast, an act that 5 days later he acknowledged committing. Inexplicably, the Government instead chose to focus on appellant's memory of the details of a different event, charging him with making a false official statement when he said on August 18 that he did not remember whether he could have touched the girls on the breast when roughhousing with them.

Moreover, trial counsel, in the Government's opening statement at the court-martial, assured the members: "Special Agent Seibert will say that in the first interview the accused ... said, 'I don't remember if I touched either one of them on the breast.' And Special Agent Mayoral will tell you that the accused came in later and said, 'Well, I may have touched them. I probably touched them. We were roughhousing. I probably touched them.' "

No such testimony was ever produced at trial. Neither agent testified as to the content of appellant's statements. When called, the agents simply discussed procedure, including the fact that they prepared and typed the statements, which appellant reviewed and signed. The Government simply introduced these written pretrial statements, neither of which clearly contradicted appellant's statement that he did not remember certain details of an off-duty event occurring more than a year before his interrogation that only tangentially was related to an investigation of much more serious alleged misconduct.

### IV

This appellant was interrogated after being advised that he was suspected of charges including rape, which carried a potential sentence of life imprisonment. *See* para. 45e(1), Part IV, Manual, *supra.* During the interrogation, investigators asked a question that, in context, reasonably could have been interpreted by appellant as making a general and speculative inquiry about an ancillary matter occurring more than a year before the interrogation, not involving any military duty.

---

3. The investigators' lack of attention to the August 18 denial of memory is understandable. They were investigating an alleged rape, and the question of the suspect's memory of an ancillary matter likely would not have been of great concern to them.

Given the circumstances of this case and the context of the specific questions, we are satisfied that appellant's statement that he did not remember certain details was reasonable. At no time during subsequent interrogations did the investigators raise any questions about his denial of memory. The Government promised in its opening statement to produce testimony that directly would have contradicted appellant's denial of memory, but it failed to offer such testimony.

The issue in this case is not whether appellant is guilty of the battery of pinching a young girl; he was convicted of that offense, and we have not altered that finding on appeal. The issue, moreover, is not whether he made a false official statement when he denied the act of pinching; the Government had the opportunity to prosecute him for making two potentially contradictory statements but chose not to do so.

Instead, the issue is whether, under the circumstances of this case, appellant made a false official statement under Article 107 when, in response to a vague and speculative question, he said that he could not remember certain specific details of an off-duty, off-post event that occurred more than a year before an official inquiry into relatively much more serious misconduct. Based upon our review of the record, we hold that the Government failed to introduce evidence upon which a rational court-martial panel could conclude that this statement was false.[4]

Thus, the evidence is legally insufficient to sustain this conviction. In view of the significant offenses of which appellant remains convicted and in view of the sentence, we hold that this error is not prejudicial as to sentence.

## V

The decision of the United States Army Court of Criminal Appeals is reversed as to Charge I and its specification. The findings of guilty thereon are set aside, and Charge I is dismissed. In all other respects, the decision below is affirmed.

Judge CRAWFORD concurs.

COX, Chief Judge (concurring):

Judge Sullivan states that my concurrence in *United States v. Solis,* 46 MJ 31, 36 (1997), "possibly raises some doubt ... about extinction of the 'exculpatory-no' doctrine." 47 MJ at 151. This does not accurately characterize my opinion there, where I expressly stated: "I agree that the 'exculpatory no' doctrine does not provide a defense to a prosecution for making a false official statement under Article 107, Uniform Code of Military Justice, 10 USC § 907."

Judge Sullivan also suggests that *Solis* was intended to bring about "extinction" of the applicable provisions of the Manual for Courts–Martial, United States (1995 ed.). This does not accurately reflect the principal opinion in *Solis,* which expressly left open the effect of the Manual's provisions. 46 MJ at 35–36. As I noted in my concurring opinion:

> I reserve judgment, however, as to whether a military member who initially denies involvement in a criminal enterprise to a military police investigator may be prosecuted under this article in light of paragraph 31c(6)(a), Part IV, Manual for Courts–Martial, United States (1995 ed.), which provides, "A statement made by an accused or suspect during an interrogation is not an official statement within the meaning of the article if that person did not have an independent duty or obligation to speak." This question was not litigated here.

46 MJ at 36.

In that regard, if there is any view that would result in extinction of the Manual's provisions, it is the position taken by Judge Sullivan, since he would affirm the conviction in this case based upon the mere articulation of Article 31, UCMJ, 10 USC § 831, warnings in a situation where there is no evidence that the individual being interrogated had an independent duty to speak.

SULLIVAN, Judge (concurring in part and dissenting in part):

I disagree with the conclusion of the majority that the granted issue in this case is

---

**4.** For similar reasons, it is problematic whether the Government produced legally sufficient evidence that appellant knew that the statement was false at the time that he made it.

resolved by this Court's holding in *United States v. Solis*, 46 MJ 31 (1997).[1] For example, although Chief Judge Cox concurred in that case, his separate opinion possibly raises some doubt in my view about extinction of the "exculpatory-no" doctrine or its Manual equivalent. *See* para. 31c(6)(a), Part IV, Manual for Courts–Martial, United States, 1984.[2] Nevertheless, I would resolve this case on the basis of my separate opinion in *Solis*, 46 MJ at 36 (concurring in the result), and the fact that appellant was advised of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831.

As for the second issue raised by the majority on its own, I disagree. The question is whether there is some evidence from which a reasonable factfinder could find that appellant made a false official statement. In my view, that opinion itself delineates sufficient evidence to meet this standard. I would therefore affirm this conviction.

GIERKE, Judge (concurring in part and dissenting in part):

I disagree with the principal opinion on two grounds. The first is procedural; the second is substantive. Procedurally, I disagree with the majority's decision to decide this case on an issue outside the granted issue, without benefit of briefs or arguments of counsel. Substantively, I disagree with the majority's conclusion that the evidence of making a false official statement is legally insufficient to sustain the findings of guilty.

The principal opinion recognizes the applicable test of legal sufficiency: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Applying this standard, albeit without benefit of briefs or oral argument, I am satisfied that a rational trier of fact could have found that appellant knowingly lied to the criminal investigators in his statement on August 18, 1993, in which he was asked if he could have touched either girl on the breast while roughhousing, and he said, "I don't remember doing it." On August 23 he was asked if he pinched either girl on the breast, and he said, "I'm pretty sure I did." He also said that it happened "[o]n the back porch swing." On August 24 appellant said, "Up to this point, I have denied any kind of physical contact which could be interpreted as sexual because I was afraid of going to jail based on her statement." He then described extensive wrestling, pinching, and tickling, and he admitted becoming sexually aroused. I think that a reasonable trier of fact could conclude, based on appellant's statements of August 23 and 24, that he was lying on August 18 when he denied any memory of touching the girls' breasts.

For the reasons stated in my separate opinion in *United States v. Solis*, 46 MJ 31, 36 (1997) (concurring in part and in the result), I would hold that the "exculpatory-no" defense was not available to appellant under the facts of this case. *See United States v. Prater*, 32 MJ 433 (CMA 1991). Accordingly, I would affirm the decision below in its entirety.

1. *United States v. Solis*, 46 MJ 31 (1997), presented a somewhat fractured view in resolving that case with three separate opinions for our five-judge court.

2. (6) *Statements made during an interrogation.*
(a) *Person without an independent duty or obligation to speak.* A statement made by an accused or subject during an interrogation is not an official statement within the meaning of the article if that person did not have an independent duty or obligation to speak. But see paragraph 79 (false swearing).
The Manual drafters commented on this provision as follows:
(6) *Statements made during an interrogation.* This subparagraph is based on paragraph 186 of MCM [Manual for Courts–Martial, United States,] 1969 (Rev.); *United States v. Davenport*, 9 MJ 364 (CMA 1980); *United States v. Washington*, 9 USCMA 131, 25 CMR 393 (1958); *United States v. Aronson*, 8 USCMA 525, 25 CMR 29 (1957).
Drafters' Analysis of paragraph 31, Part IV, Manual for Courts–Martial, United States, 1984; *see United States v. Davenport*, 9 MJ 364, 369–70 (CMA 1980) (Everett, C.J) (recognizing scope of "exculpatory-no" doctrine as applying to "a person who gives merely a negative response to the question of a law enforcement agent" and its general applicability to Article 107, Uniform Code of Military Justice, 10 USC § 907, as well as 18 USC § 1001).