# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39840**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jackie GARRETT III**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 June 2021

————————————

*Military Judge:* Rebecca E. Schmidt.

*Sentence:* Sentence adjudged on 4 October 2019 by GCM convened at Beale Air Force Base, California. Sentence entered by military judge on 30 October 2019: Bad-conduct discharge, hard labor without confinement for 3 months, forfeiture of $1,000.00 pay per month for 6 months, and reduction to E-1.[1]

*For Appellant:* Lieutenant Colonel R. Davis Younts, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF.

Before JOHNSON, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Chief Judge JOHNSON joined. Judge MEGINLEY filed a separate opinion concurring in part and dissenting in part and in the result.

————————————

[1] The convening authority suspended the forfeiture of pay for six months beginning 14 days after sentence was adjudged, and suspended the hard labor without confinement for three months from the entry of judgment. As the record contains no further action on these elements of the sentence, and the suspension periods have run, they have been remitted.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RICHARDSON, Judge:

This case was submitted to this court on its merits, with no identified assignments of error. The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). *Manual for Courts-Martial, United States* (2019 ed.). Accordingly, the findings and sentence are **AFFIRMED**.[2,3]

MEGINLEY, Judge (concurring in part and dissenting in part and in the result):

I concur with the majority's opinion that the findings entered are correct in law and fact. However, I disagree with my esteemed colleagues regarding Appellant's sentence, as I find it is inappropriately severe.

A general court-martial found Appellant guilty, in accordance with his pleas, of one specification of making a false official statement, in violation of Article 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907. A panel consisting of officer members acquitted Appellant of one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one specification of obstruction of justice, in violation of Article 134, UCMJ, 10 U.S.C. § 934. For the making of a false official statement, the panel sentenced Appellant to a bad-conduct discharge, forfeiture of $1,000.00 pay per month for six months, hard labor without confinement for three months, and reduction to the grade of E-1. On 23 October 2019, the convening authority took no action on the findings,

———————————

[2] The entry of judgment does not reflect the pen-and-ink changes made to the charge sheet before arraignment to reflect Appellant's rank as Airman First Class and not Airman as he was at the time of preferral. Appellant has not claimed any prejudice as a result of this error, and the court finds none. The military judge, through the Chief Trial Judge, Air Force Trial Judiciary, is directed to have a detailed military judge correct the entry of judgment accordingly and prior to completion of the final order under Rule for Courts-Martial (R.C.M.) 1209(b) and Air Force Instruction 51-201, *Administration of Military Justice*, Section 14J (18 Jan. 2019, as amended by AFGM 2020-02, 5 Oct. 2020).

[3] The Statement of Trial Results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice, and the court finds none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

but suspended part of Appellant's sentence related to hard labor without confinement and the adjudged forfeitures. Otherwise, the convening authority took no additional action on the adjudged sentence.

This case was submitted for our review on its merits without assignment of error. At the time of the allegations, Appellant was stationed at Beale Air Force Base and was 19 years old. In May 2017, Appellant met EL, the complainant, who was also 19 years old, on Tinder, a social media dating application. The two sent sexually explicit photos and videos to each other, and in August 2017, they engaged in consensual oral and vaginal sex at EL's parents' house in Roseville, California. EL and Appellant stopped communicating with each other in December 2017.

The next time they communicated was on 10 May 2018. Later that same evening, they met up to engage in sexual activity. EL ultimately performed consensual oral sex on Appellant in his car, but EL alleged that when she insisted that Appellant wear a condom for vaginal sex, Appellant refused to wear a condom, and subsequently raped her. Appellant was acquitted of rape, as well as an obstruction of justice charge related to the allegation.

On 6 June 2018, Appellant was interviewed by an Air Force Office of Special Investigations (AFOSI) agent and a Roseville (CA) detective at AFOSI's location on Beale Air Force Base. The agent and detective asked Appellant whether he knew EL and if he had ever met her in person. Appellant repeatedly denied knowing or meeting EL, nor did he know an "[E]" or a female by the name of "[L]." Reviewing this two-hour video, the entire interrogation comes across as a rather desperate effort by the detective and agent to convince Appellant to admit he knew EL. It is also worth noting that Appellant, who is African-American, was being interrogated by two white members of law enforcement.

At his court-martial, Appellant pleaded guilty to making a false official statement. The language of the specification is as follows:

> [Appellant] did, at or near Beale Air Force Base, California, on or about 6 June 2018, with intent to deceive, make to the Air Force Office of Special Investigations, an official statement, to wit: that he did not meet E.R.L. in person, and did not know anyone named "E" or "L", which statement was totally false, and was then known by the said [Appellant] to be so false.

During his providence inquiry (which was played back for members during sentencing), Appellant acknowledged his statement about his lack of knowledge about EL was "totally false," and that when he made this false official statement "[he] was concerned that they were going to lock [him] up for

something that [he] did not do," referring to the allegation of rape and the obstruction of justice.

In a relatively brief argument, trial counsel argued for a bad-conduct discharge, confinement for 18 months, total forfeitures, and reduction to E-1 for Appellant's "lying" to AFOSI. Trial counsel focused on the fact that Appellant "lied to OSI investigators during an official investigation. He denied knowing a real person in a real investigation." Trial counsel continued, saying,

> During that conversation, the interview, he had multiple opportunities, multiple opportunities to tell the truth, and he didn't do it. He was asked point-blank, "Do you know [E]? [L]?" He denied it. Lying to OSI in an official investigation *involving rape* is serious, and your sentence should reflect the seriousness of that crime.

(Emphasis added).

Shortly after this comment, in discussing rehabilitation, trial counsel stated,

> Rehabilitation is also a sentencing principal [sic]. And in making this recommendation to the court, the government did take into account the defense's exhibits as well as the fact that he pled guilty. Members this is a sad day. We recognize the fact that the accused has recommendation letters from his girlfriend, his father, his cousin, friends, and family. We do recognize that. But he chose, he chose to lie to OSI. In his short time in the Air Force, he has an Article 15. He hasn't even gotten an EPR [(enlisted performance report)] yet, and already he is lying in an official investigation *involving rape.*

(Emphasis added).

Trial counsel concluded his argument by saying,

> Your sentence can send a message, which takes us to another principle of sentencing, deterrence. Send a message to the accused. Send a message to anyone who thinks about lying to OSI. The accused is smart, but what he did was not just wrong, it was a crime, a serious crime, and your sentence should reflect the seriousness of that criminality.

Trial defense counsel responded to this recommendation by arguing,

> The government's recommendation is wholly unreasonable and inappropriate. A punitive discharge for a false official statement? The judge will provide you with instructions. She has read

> them to you. I'd like you to go back and please reread that portion for punitive discharge. It is commonly recognized by our society as being a stigma. It will affect his future legal rights, economic opportunities, and social acceptability. This is a black stain. Had he been convicted of rape, that's one thing. That's a serious crime. But that's not what happened in this courtroom today. Wholly unrealistic, any type of punitive discharge.

Trial defense counsel further stated, "Confinement? Put him in a cage? . . . And where did we get 18 months? . . . How does that serve any purpose of sentencing . . . ? Which is the appropriate consideration, no confinement." Finally, trial defense counsel closes the sentencing argument with: "[T]his is not a case that involves a punitive discharge. This is not a case that involves confinement." I agree.

The video of Appellant's interview leaves no doubt that trial counsel sought to sensationalize Appellant's false official statement to AFOSI with a grossly excessive recommendation of 18 months confinement, total forfeitures, and a bad-conduct discharge. Appellant's denial of EL was inconsequential, as law enforcement had enough evidence to show that Appellant did in fact know EL, and confronted him with that evidence. Yet, asking for 18 months confinement for a 19-year-old young adult whose only conviction was for making an inconsequential false official statement to law enforcement lacked any meaningful credibility. As I noted in *United States v. Palacios Cueto*, "every attorney in a court-martial has a duty to uphold the integrity of the military justice system." No. ACM 39815, 2021 CCA LEXIS 239, at *77 (A.F. Ct. Crim. App. 18 May 2021) (Meginley, J., dissenting) (unpub. op.) (quoting *United States v. Voorhees*, 79 M.J. 5, 15 (C.A.A.F. 2019)). Upholding the integrity of our system includes making reasonable, appropriate sentencing recommendations, and not merely engaging in bargaining and gamesmanship with the members in the anticipation of what trial defense counsel may argue on behalf of their client.

Regarding the sentence itself, "[W]e must bear in mind that an accused is to be sentenced only for the offenses he has been found guilty of committing beyond a reasonable doubt," *United States v. Buber*, 62 M.J. 476, 478 (C.A.A.F. 2006), and in fact, the military judge instructed the members as such. Further, the members are presumed to have followed this instruction until demonstrated otherwise. *United States v. Washington*, 57 M.J. 394, 403 (C.A.A.F. 2002) (citing *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991)). However, in light of trial counsel's argument and the sentence adjudged, this is a presumption I cannot make. First, Appellant's denial of knowing EL was not sophisticated or diabolical—a reasonable person watching the video can see that Appellant is lying to law enforcement about his knowledge of EL, even as they

confront him with messages obtained from EL between herself and Appellant.[1] Second, Appellant was less than truthful with law enforcement agents because he did not want to be "lock[ed] up" for a crime he did not commit. Arguably, he denied knowing EL because he was afraid of what was going to happen, and given that Appellant was a young African-American male being interrogated by two white members of law enforcement, it is reasonable to infer this too could have contributed to his fear. Third, Appellant pleaded guilty to his crime of making a false official statement. Finally, and perhaps most telling, there were no aggravating facts related to his statement to law enforcement that he did not know EL.

Yet, Appellant's sentence certainly leaves an impression that he was sentenced for something far greater than a mere false official statement to AFOSI. In light of trial counsel's comments, I cannot rule out that Appellant was sentenced for solely being the suspect of a case that *involved rape*, something trial counsel twice reminded the members, or, that he was sentenced for what may be interpreted as immoral, but not illegal behavior, related to the facts surrounding the litigated charges.

There are cases where other courts have addressed or reassessed sentences when the only charge being affirmed is a single specification of false official statement by setting aside a bad-conduct discharge. *See Buber*, 62 M.J. at 480 (where Army Court of Criminal Appeals (ACCA) reassessed a sentence of a single specification of false official statement to confinement for two years and a bad-conduct discharge, the CAAF set aside the sentence and ordered a rehearing because the sentence landscape had "dramatically" changed after ACCA set aside the offenses of unpremeditated murder and assault upon a child); *United States v. Simmermacher*, No. 201300129, 2015 CCA LEXIS 425 (N.M. Ct. Crim. App. 15 Oct. 2015) (per curiam) (unpub. op.) (reassessing the sentence for false official statement when the cocaine charge was dismissed, the court concluded that it "can reassess the sentence to affirm only so much as provided for reduction to pay grade E-3"); *United States v. Spurling*, No. 201400124, 2014 CCA LEXIS 771 (N.M. Ct. Crim. App. 16 Oct. 2014) (unpub. op.) (where appellant was sentenced by members to reduction to pay grade E-1 and a bad-conduct discharge for one specification of false official statement,

---

[1] Appellant's denials could be construed as the once-accepted "exculpatory no" to law enforcement, which in some jurisdictions would preclude the prosecution of an individual who denies criminal conduct. The CAAF has rejected this doctrine, stating that "the 'exculpatory no' doctrine is not supported by the language of Article 107. . . ." *United States v. Solis*, 46 M.J. 31, 36 (C.A.A.F. 1997). Nonetheless, the mere thought that Appellant's false statement may not even be a crime in other jurisdictions, coupled with the facts presented, cuts across trial counsel's argument that this was a "serious" crime worthy of 18 months confinement.

the court set aside the bad-conduct discharge as inappropriately severe), *rev'd on other grounds*, 74 M.J. 261 (C.A.A.F. 2015);

In conducting my review under Article 66, UCMJ, 10 U.S.C. § 866, and considering "the nature of the members' verdict," and "the lack of any readily identifiable aggravating circumstances," I am not "assur[ed] that justice [was] done and that the [[A]ppellant] g[ot] the punishment he deserve[d]." *Spurling*, unpub. op. at \*19 (alterations in original) (quoting *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988)). Had this false official statement been the only allegation Appellant faced, he more than likely would have received nothing more than nonjudicial punishment (Article 15, UCMJ). Instead, he was cumulatively adjudged $6,000.00 in forfeitures, 90 days of hard labor without confinement, reduction to E-1, and the lifelong punishment of a punitive discharge, for making a false statement related to a crime *involving rape*, of which he was acquitted.[2] I recognize the Government was not presented, nor given an opportunity to respond to the issue of sentence appropriateness, however, the record speaks for itself. At a minimum, I would disapprove that part of Appellant's punishment that calls for a bad-conduct discharge.

Therefore, I respectfully dissent.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[2] The majority noted the convening authority suspended the forfeiture of pay for six months beginning 14 days after sentence was adjudged, and suspended the hard labor without confinement for three months from the entry of judgment. However, the convening authority suspended these punishments in an effort "to enable [Appellant] to begin appellate leave at entry of judgment."